THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL MEITZ, Defendant-Appellant.

Second District    No. 80-478

Opinion filed May 6, 1981.

Michael D. Ettinger and Blair I. Braverman, both of Barnett, Ettinger, Glass, Berkson & Braverman, of Oak Lawn, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko, Martin P. Moltz, and Cynthia Schneider, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The defendant, Michael Meitz, was charged by information with auto theft in violation of section 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)). The defendant filed a pre-trial motion to suppress. After a hearing, the motion was denied. At a bench trial, the parties stipulated that the case would be tried on the evidence adduced at the hearing on the motion to suppress, and the stipulated testimony of the owner of the stolen auto. The defendant was found guilty as charged. The defendant appeals the denial of the motion to suppress. Defendant did not file a post-trial motion, but did file a notice of appeal.

On October 16, 1978, Officer McNabb of the Willowbrook Police Department was one of three police units participating in a stakeout of the Knolls Apartment complex in Willowbrook, Illinois. The Knolls complex had recently been the scene of a series of auto thefts. Prior to the stakeout, the Willowbrook Police Department had determined that most of the thefts occurred between 9 p.m. and 4 a.m. on Thursday and Sunday evenings, and that approximately 85% of the stolen automobiles were late model General Motors vehicles. The Willowbrook police had been observing the complex between 9 p.m. and 4 a.m. on Thursdays and Sundays for the two weeks preceding October 16, 1978.

On that date, Officer McNabb was assigned to watch one of the exits of the Knolls complex parking lot. He was instructed to perform a registration check of all late model General Motors vehicles leaving the lot. At approximately 11:58 p.m., McNabb observed a 1976 Chevrolet Corvette and a Pontiac Trans Am exiting the apartment complex. McNabb called in a license check of the 1976 Corvette and instructed one of the other units to conduct a traffic stop of the Trans Am.

McNabb then followed the southbound Corvette for two blocks. As he followed the Corvette, he noted that the rear window was fogged up and had not been cleaned. The license check revealed that the 1976 Corvette belonged to a Ron Janec. Then, by activating his overhead lights, McNabb signaled the driver of the Corvette to pull over.

After accelerating a few times, the Corvette pulled over. The driver of the Corvette was the defendant in this case. The officer asked to see the driver's license of the defendant. When the officer noted that the name on the driver's license was not that of Ron Janec, he asked the defendant who owned the car. The defendant replied that he did not know. At that time, the officer noted that the ignition had been "pulled" and the door lock had been jimmied. After a few more inquiries as to who owned the car, the defendant was arrested.

The sole issue raised by the defendant on appeal is the legality of the October 16, 1978, vehicle stop. If the vehicle stop was illegal, it follows that the subsequent arrest was illegal and the motion to suppress should have been granted. All parties agree, however, that if the initial stop was valid, so was the subsequent arrest.

We note that the defendant's failure to raise this issue in a post-trial motion operates as a waiver of the issue on appeal. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181; *People v. Jackson* (1981), 84 Ill. 2d 350, 358; *People v. Hammond* (1977), 48 Ill. App. 3d 707, 708; see also *People v. Schoo* (1977), 55 Ill. App. 3d 163.) In *People v. Jackson* the supreme court stressed the rationale of requiring a post-trial motion:

> "[S]pecific references in post-trial motions to the reasons why a trial judge's actions or rulings were wrong enables him to reconsider their propriety in a less pressured environment. If an egregious error has actually occurred, the judge can order a new trial, thus avoiding the delay and expense of appellate review." *People v. Jackson* (1981), 84 Ill. 2d 350, 359.

The waiver rule, however, is not absolute. Even in the absence of a post-trial motion, plain error or defects affecting substantial rights maybe considered under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)). While the defendant has failed to file a post-trial motion, he does contend that the vehicle stop which led to his arrest violated his substantial rights under fourth and fourteenth amendments. We therefore, examine the record to determine whether the denial of defendant's motion to suppress constituted "plain error" which may be reviewable under Rule 615(a). See *People v. Woodward* (1979), 77 Ill. App. 3d 352, 353.

It is clear that this type of vehicle stop constitutes a "seizure" within the meaning of the fourth and fourteenth amendments. (*Delaware v. Prouse* (1979), 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396; *cf. Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) Initially, we pointed out that in this case we are not dealing with an automobile stop which can be deemed valid because the police officer possessed sufficient and articulable facts from which he could believe that the driver was committing an offense. (*People v. Scarpelli* (1980), 82

Ill. App. 3d 689.) The only incriminating factors in this case are the following: (1) two automobiles left a parking lot which had recently been the scene of several auto thefts, (2) both autos were the type that had been susceptible to the thefts, (3) the driver of the stopped automobile had not taken the time to clean his rear window. In the case at bar, the trial court held that these facts did not allow Officer McNabb to possess sufficient articulable facts from which he could have believed that the defendant was committing an offense. We agree.

However, whether an officer possesses sufficient articulable facts from which he could believe that an offense was committed is not the sole standard to be used in assessing the validity of the stop. In *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074, the Supreme Court, in determining whether a reasonable suspicion of a particular individual is a prerequisite for a valid automobile stop, differentiated between a roving patrol stop and a stationary check-point stop. In a roving stop, individual suspicion is a prerequisite; whereas in a check-point stop such a prerequisite was held to be impracticable. In a check-point stop, a particularized study of each vehicle would be too difficult, and it would be ineffective against experienced criminals. The court stated that while these stationary check-point stops did intrude upon the motorists' right to free passage without interruption (*Carroll v. United States* (1925), 267 U.S. 132, 154, 69 L. Ed. 543, 45 S. Ct. 280), it involves only a brief detention of the travelers during which all that is required of the vehicle's occupants is a response to a brief question or two and possibly the production of a document. The court gave two justifications for not requiring an individualized suspicion in a check-point stop: (1) motorists are not taken by surprise and frightened by a check-point stop; and (2) a check-point stop eliminates discretionary enforcement by police officers.

■■ Here, the defendant, noting that there were no facts to indicate an individualized suspicion, attempts to characterize the instant stop as an invalid "roving patrol"; the State, however, characterizes the stop as a "check-point" stop not requiring individualized suspicion. The validity of a search or seizure, however, should not turn upon such simple classifications. Rather, each case must be decided on its own facts (*Terry v. Ohio* (1968), 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884), and the validity of the stop should be determined, as it was in *Terry* and most recently in *Delaware v. Prouse* (1979), 440 U.S. 648, 654, 59 L. Ed. 2d 660, 667-68, 99 S. Ct. 1391, 1396, by a balancing of interests: "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Therefore, in order to fully assess the reasonableness of Officer McNabb's conduct, "it is necessary

'first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails'." *Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879, citing *Camara v. Municipal Court* (1967), 387 U.S. 523, 534-37, 18 L. Ed. 2d 930, 938-40, 87 S. Ct. 1727, 1734-35.

■■ Here, the police officer was responding to a governmental interest in stopping a rash of auto thefts occurring on a particularized parking lot. Prior to instituting the registration check procedure, the police department determined the times in which the thefts were likely to occur and the automobiles that were to be the most susceptible. The department then instructed its officers to stop all susceptible vehicles leaving the two exits of the parking lot during the hours in which the thefts had originally occurred. Prior to stopping the susceptible vehicles the officers were to call in a license check on the automobiles. After the officer had obtained the name of the owner, and had stopped the vehicle, he was to request to see a driver's license and to ask a few questions concerning ownership of the vehicle. In the instant case, it is a fair assumption that if the defendant had shown the officer a driver's license that matched the name of the owner or had been able to name the owner there would have been no further detention of the defendant. The governmental interest in stopping a series of auto thefts occurring from this one particular parking lot outweighs this minimal intrusion into the defendant's fourth amendment rights.

It should be noted that in *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391, the court held that an officer's stop of a vehicle to check its registration was unconstitutional. In *Prouse*, a patrolman, who apparently had nothing better to do, randomly stopped automobiles to check their registration. Upon stopping one of the automobiles, he noted that the automobile smelled of marijuana and that there was marijuana in plain view on the floor of the automobile. The defendant, who was an occupant of the vehicle, was arrested. The trial court granted the defendant's motion to suppress. The Supreme Court affirmed on the ground that the patrolman was not acting pursuant to any standard guidelines or procedures pertaining to document check stops. The court noted that if these random stops are to be valid, they may not be subject to the discretion of an officer in the field. To be reasonable, the stop must be based on facts which are capable of measurement against an objective standard. As was stated in *People v. Carlton* (1980), 81 Ill. App. 3d 738, 741:

"Nothing in the *Prouse* opinion prohibits the stopping of vehicles

as long as the stops are not unreasonably intrusive on the privacy of the motorist and his passengers and do not involve the unconstrained exercise of discretion by the police officer."

Here, unlike *Prouse*, there is no roving patrol who has complete discretion as to whom he stopped. Rather, pursuant to specific guidelines and procedures, all susceptible automobiles exiting from a stationary point were stopped.

The defendant admits that using a roadblock to check the registration of all vehicles as they left the complex would have complied with the requirements of the fourth amendment. He contends, however, that under *Martinez-Fuerte* this registration check is invalid because the automobiles exiting the complex were not stopped until they were two blocks from the complex, and because the registration check did not give the defendant sufficient advance notice. We fail to see how allowing the exiting vehicle to travel two blocks before it is stopped makes the stop any more or less reasonable. Moreover, stopping all vehicles at the exit, as suggested by the defendant, would have alerted prospective auto thieves of the police presence and thus would have rendered the stakeout useless. Similarly, defendant's contention that advance notice should have been given is impracticable. While advance notice or a registration check may deter auto thefts on the nights that the stops are made, it will not aid police officers in determining who is responsible for the auto thefts. Moreover, in *Delaware v. Prouse* the court deemphasized the need for advanced warning. They noted that fright and surprise are as much of a factor in a check-point as in a random stop. Rather, the more important factor in determining the reasonableness of a vehicle stop is the lack of discretion of the officer in the field.

▆ The important governmental interest in investigating a series of recent auto thefts justifies "at least systematic and undiscretionary brief stops of automobiles, * * * to check the operator's license of the driver" or to inquire as to the ownership of the automobile. (*People v. Estrada* (1979), 68 Ill. App. 3d 272, 279, *cert. denied* (1979), 444 U.S. 968, 62 L. Ed. 2d 382, 100 S. Ct. 459.) Officer McNabb was charged with investigating a series of auto thefts that had occurred from a particular parking lot. Pursuant to detailed instructions, he stopped vehicles exiting the scene of the thefts at the approximate time the thefts had earlier occurred. The inconvenience to citizens stopped was minimal. There was no search or frisk of their persons. They were stopped merely for the time it took to examine their licenses and check upon the ownership of the vehicles. Officer McNabb's behavior was reasonable under the circumstances and therefore met the criteria set down in *Terry v. Ohio. People v. Shaffer* (1977), 49 Ill. App. 3d 207, 211.

▆ In the case at bar, the trial court, relying on *Delaware v. Prouse*,

correctly held that an order to perform a registration check on all late model General Motors vehicles exiting from a parking lot which had a high incident of auto theft during the late hours of the night was valid. The stop is comparable to the use of a roadblock validated in *People v. Shaffer* (1977), 49 Ill. App. 3d 207. (See also *People v. Estrada* (1979), 68 Ill. App. 3d 272, *cert. denied* (1979), 444 U.S. 968, 62 L. Ed. 2d 382, 100 S. Ct. 459.) Stopping the automobile driven by the defendant was in furtherance of an important governmental interest, and it did not unreasonably infringe upon the defendant's fourth amendment rights nor did it involve the unconstrained exercise of discretion by the police officer. The trial court did not err in denying the defendant's motion to suppress.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.