THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARVEL ROWE, Defendant-Appellant.

First District (3rd Division)   Nos. 81—1547, 81—2748 cons.

Opinion filed May 25, 1983.

James J. Doherty, Public Defender, of Chicago (Timothy Kevin McMorrow, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and Lawrence R. Stasica, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

After a jury trial defendant, Arvel Rowe, was convicted of murder and armed robbery and was sentenced to concurrent extended terms of imprisonment of 60 years for murder and 40 years for armed robbery. He appeals from these convictions and sentences.

This case arises out of the fatal shooting of Mazmi Rouhman. The testimony presented at trial was as follows.

Marlo Tassin, who was nine years old at the time of the incident, testified that on January 2, 1980, at approximately 3:30 in the afternoon, she was in a grocery store owned by Mazmi Rouhman when Ferrel Cunningham entered with a gun. A few minutes later defendant entered the store and grabbed Hussein Zeidieh, a clerk in the store, and Cunningham said, "Everybody move back." Both men took money from the cash register and then Cunningham shot and killed Rouhman. Defendant and Cunningham then left the store and got into a yellow car. Marlo testified that she kept her hands over her eyes during the robbery but that she saw defendant's face once for about five seconds when she peeked through her fingers. Marlo also testified to having identified defendant in a lineup on January 4, 1980.

Hussein Zeidieh testified similarly except: (1) he said that Ferrel Cunningham entered the store after defendant; and (2) he identified Cunningham as the man with the gun but did not identify the other perpetrator.

Chicago police officer William Graham testified that he arrested defendant on January 3, 1980. Defendant was a passenger in a yellow car driven by Cunningham.

Deputy Sheriff Mary Ellen Smith testified that on April 15, 1981, she was present in a courtroom during a pretrial hearing when Hussein Zeidieh was testifying. Defendant and Ferrel Cunningham were sitting together at the defense counsel's table. During a sidebar conference, she heard defendant say to Cunningham, "We should have killed him too."

Assistant State's Attorney Linda Woloshin testified that she interviewed defendant on January 4, 1980, and that defendant made three statements regarding his activities on January 3, 1980. In the first statement he told her that he let a friend, Crazy Mike, borrow the license plates to his car. Crazy Mike was driving the yellow car in which defendant was arrested. Defendant said that Crazy Mike drove him to Cunningham's mother's house and then to Cunningham's fiancee's house where defendant took a nap until 4 p.m. In the second statement, defendant said that he left Cunningham's mother's house with Cunningham and Eric Flowers at 3 p.m. Cunningham removed a shotgun from the house and said that he and Flowers were going out to make some money. Defendant was dropped off at Cunningham's fiancee's house. Flowers and Cunningham returned after 4 p.m. and told defendant that Rouhman had been shot. Ms. Woloshin further testified that in defendant's third statement he said that he, Flowers, and Cunningham all drove to the scene of the crime and parked the car. Cunningham took a gun from the trunk and walked into the store. Defendant and Flowers remained in the car. Shortly thereafter, defendant said he heard a shot. Cunningham ran out of the store, threw his shotgun into the car and told them to drive away.

For the defense, Gerviece Collier, who was 15 at the time of trial, testified that she was in Rouhman's store with Marlo at the time of the robbery and shooting. She said that she saw the two offenders but that neither Arvel Rowe nor Ferrel Cunningham were the offenders. On cross-examination, however, she testified that she had told Detective Banahan that she could not identify anyone who was in the store on the day of the crime. She also testified that she had known Ferrel Cunningham for approximately two years.

Defendant first contends that he was not proved guilty beyond a reasonable doubt. He argues that Marlo Tassin's testimony was so weak and riddled with contradictions as to render it unreliable, and that defendant's purported admissions were ambiguous.

■■ The testimony of a single witness is sufficient to convict

where the witness is credible and had an opportunity to view the offender under circumstances which would permit a positive identification to be made even where that testimony is contradicted by evidence presented by the accused. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666.) This court has held that five to 10 seconds is sufficient time to allow a positive identification and support a conviction. (*People v. Brown* (1977), 50 Ill. App. 3d 348, 353, 365 N.E.2d 907; *People v. Porter* (1975), 29 Ill. App. 3d 456, 460, 330 N.E.2d 599.) It is the province of the jury to weigh the evidence presented, judge the credibility of the witnesses, and determine facts; a court of review will not set aside a jury's verdict of guilty unless the evidence is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt as to defendant's guilt. *People v. Sumner* (1969), 43 Ill. 2d 228, 232, 252 N.E.2d 534.

In the instant case, the evidence was not so unsatisfactory as to raise a reasonable doubt as to defendant's guilt. Defendant was identified in a lineup and again in court by an eyewitness, Marlo Tassin. The testimony of Deputy Smith was additional evidence tending to show defendant's guilt. Furthermore, the jury was not required to believe the testimony of Gerviece Collier. Accordingly, we find that defendant was properly found guilty of murder and armed robbery.

■ Defendant next contends that his arrest was not based upon probable cause and that his statements which were the product of his alleged unlawful arrest, were improperly admitted into evidence. Defendant argues that his arrest was based solely on information of an informant who was not demonstrated to be reliable. We disagree.

The determination of whether probable cause for an arrest exists in a specific case depends upon the totality of the facts and circumstances known to the officers when an arrest is made. (*People v. Creach* (1980), 79 Ill. 2d 96, 102, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564; *People v. Robinson* (1976), 62 Ill. 2d 273, 276-77, 342 N.E.2d 356.) Probable cause exists if a reasonable and prudent person in possession of the knowledge which has come to the arresting officer would believe that the person to be arrested had committed a crime (*People v. Vogel* (1978), 58 Ill. App. 3d 910, 913, 374 N.E.2d 1152), and the trial court's finding will not be disturbed unless manifestly erroneous. *People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280.

On April 13, 1981, defendant's motion to quash arrest and suppress evidence was denied. In considering a ruling upon a motion to suppress, a reviewing court may consider evidence admitted during the trial after the conclusion of the suppression hearing. (*People v.*

*Sakalas* (1980), 85 Ill. App. 3d 59, 65, 405 N.E.2d 1121.) Here the evidence of probable cause admitted during the hearing and at trial showed the following. Chicago police officer William Graham testified that on the night he arrested defendant, his attention was drawn to a yellow vehicle with license plate number GV 9481. Graham had information from a police report that a yellow car with that license number was involved in strong-arm robberies and purse snatching. Furthermore, Graham had information from a police bulletin that a yellow vehicle was wanted in a homicide which had occurred just a few blocks away. Graham was also told by an individual by the name of "Ray-Ray" that defendant was in possession of a stolen vehicle, a yellow car, and that defendant had his license plates on it. Graham testified that once he saw the car he entered the license plate number in his mobile computer, located in his squad car, and learned that the plate was registered to defendant for a 1970 Chrysler. However, the yellow car in question was a 1980 Buick. After Graham stopped the car he checked the vehicle identification number and found that the car was stolen. Defendant told the officer that his name was Tony White. Defendant and Cunningham, who was also in the car, fit the description of the persons wanted in the robbery-purse snatching case report.

To establish probable cause for the defendant's arrest under the circumstances of this case it was not necessary that it be established that Ray-Ray was a reliable informant. Where there exists independent information sufficient to establish probable cause to arrest, an informant's reliability need not be shown to support a finding of probable cause. (See *People v. Clay* (1973), 55 Ill. 2d 501, 505.) Here, Officer Graham did not make the arrest solely on the basis of information obtained from Ray-Ray. Rather, Graham knew from a police report that a yellow car with the license plate of the car in question was involved in a pattern of robberies. Such information was sufficient to warrant the initial stop of the automobile. (*People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 694, 402 N.E.2d 915, *cert. denied* (1981), 450 U.S. 915, 67 L. Ed. 2d 340, 101 S. Ct. 1357; and see *People v. Meitz* (1981), 95 Ill. App. 3d 1033, 420 N.E.2d 1119.) Once the vehicle was stopped, Officer Graham learned that (1) the car was stolen, and (2) defendant fit the description of the person wanted in a robbery. Such information was clearly sufficient to establish probable cause to arrest. In light of the above, we find that the trial court's finding of probable cause to arrest was not manifestly erroneous.

■ Defendant next argues that evidence that defendant had stolen the car in which he was arrested was improperly presented to

the jury and, therefore, a new trial is required. At trial, Assistant State's Attorney Linda Woloshin testified that defendant made three statements to her. Concerning the second statement Woloshin testified that defendant had told her that he had stolen the car in which he was arrested. Counsel for defendant objected to the testimony; the objection was sustained, and the jury was instructed to disregard the question and response.

Evidence of other crimes committed by a defendant is inadmissible to show that the defendant has a propensity to engage in criminal activity; however, such evidence is admissible when relevant for other purposes. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.) Other crimes evidence has been held admissible if relevant to demonstrate knowledge, intent, motive, design, plan or identification (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238), and has also been held admissible when relevant to police investigation of the offense at issue where such investigatory procedures involved an integral part of the narrative of that arrest. *People v. Davis* (1981), 93 Ill. App. 3d 187, 191, 416 N.E.2d 1179.

Here, even assuming that the evidence purporting to show that the vehicle was stolen was not admissible, any error that occurred was cured by defendant's objection which was sustained and by the trial court's instruction to the jury to disregard the question and response. *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233.

■ Defendant next contends that the testimony of Detective Tosello that Marlo Tassin viewed a lineup on January 3, 1980, and did not make any identification was improper hearsay evidence. Marlo's testimony established that she identified defendant from a lineup held on January 4, 1980, but her testimony makes no reference to a January 3 lineup. Defendant maintains that Tosello's testimony was improper because a policeman who conducts a lineup may not testify that a witness identified the defendant unless the witness himself also testifies to the lineup identification, citing *People v. Rogers* (1980), 81 Ill. 2d 571, 400 N.E.2d 223. Defendant urges us to extend this rule to the facts of the instant case where the testimony concerned a lineup where no identification was made. However, under the facts of this case, even if Tosello's testimony was improper, any error that occurred was harmless. Where hearsay evidence is admitted in error and there is no reasonable possibility that a jury would have acquitted the defendant had the evidence been excluded, the admission of such evidence is harmless error. *People v. Hall* (1980), 90 Ill. App. 3d 1073, 1077, 414 N.E.2d 201, *cert. denied* (1981), 454 U.S. 893, 70 L. Ed. 2d 207, 102 S. Ct. 388.

328

■ Defendant next contends that he was prejudiced by the following statement made by the prosecutor in closing argument:

"Ladies and gentlemen, you have heard during this case more evidence about the guilt of Arvel Rowe than almost any case that I have ever tried."

Objection to this comment was overruled.

Generally, a prosecutor may not state his opinion as to the guilt or innocence of the defendant or compare the sufficiency of the evidence to that of other cases. (*People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256; *People v. Martinez* (1979), 76 Ill. App. 3d 280, 395 N.E.2d 86.) However, here the trial court instructed the jury that closing arguments are not evidence and that any argument or statement made by the attorneys which is not based on the evidence should be disregarded. Instructions of this nature have been held to cure any potential prejudice arising from a prosecutor's improper remarks in closing argument. (*People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 122, 390 N.E.2d 1339.) Accordingly, on the record before us we find that the complained of remark did not constitute a material factor in defendant's conviction.

■ Defendant next contends that it was reversible error for the jury to be instructed as to the definition of circumstantial evidence and the fact that circumstantial evidence could be used in reaching its verdict. Defendant maintains that there was no circumstantial evidence in this case. We disagree.

Circumstantial evidence is "proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience." (*People v. Stokes* (1981), 95 Ill. App. 3d 62, 68, 419 N.E.2d 1181.) In the instant case the jury heard evidence from which it could infer defendant's guilt. Officer Graham testified that defendant was arrested in a yellow car the day after the murder. Such information, when combined with Marlo's testimony that she saw defendant leave the scene of the robbery in a yellow car, would allow the jury to infer defendant's guilt. Accordingly, the trial court did not err by instructing the jury on circumstantial evidence.

■ Defendant finally contends that he was improperly sentenced to extended-term sentences of 60 years for murder and 40 years for armed robbery. Defendant maintains that the murder in this case was not accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty" as required by statute. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).) Defendant also argues that even if the offense itself is sufficient to justify an extended term, his participa-

tion in the offense is not. Defendant emphasizes that he was not the "trigger man."

The law is clear in Illinois that a sentence will not be altered on review absent an abuse of the trial court's discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) In imposing an extended-term sentence, "the application of the statute is determined by the 'offense' rather than by the extent or nature of the offender's participation." (*People v. Gray* (1980), 87 Ill. App. 3d 142, 153, 408 N.E.2d 1150, *cert. denied* (1981), 450 U.S. 1032, 68 L. Ed. 2d 228, 101 S. Ct. 1745.) In *Gray* this court upheld the imposition of an extended-term sentence where the defendant's conviction was based on an accountability theory. 87 Ill. App. 3d 142, 147.

Here, the sentencing judge found that "there was brutal and heinous conduct on behalf of the defendant, indicating wanton cruelty under the act." The sentencing judge also found that there were no factors in mitigation. We believe that the trial court properly found that the offense was heinous and indicative of wanton cruelty, based on the fact that even though the robbery was accomplished, Cunningham gratuitously shot Mr. Rouhman with a shotgun in the presence of two young girls.

■ Defendant also argues that his extended-term sentence for armed robbery is improper. Specifically, defendant maintains that the imposition of the extended-term sentence for his armed robbery conviction was statutorily impermissible under section 5—8—2(a) of the Unified Code of Corrections, which provides:

> "A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. ***" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2(a).)

Section 5—5—3.2(b)(2) of the Code provides that an extended sentence may be imposed "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).

The plain language of the statute authorizes an extended-term sentence only "for the class of the most serious offense" of which defendant was convicted. There is no language in the statute that authorizes an extended-term sentence for the class of the lesser offense of which defendant was convicted. Furthermore, penal statutes are to be strictly construed in favor of an accused and any ambiguity therein

should be resolved in favor of lenity. (*People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 1024, 439 N.E.2d 1311.) In light of this principle of statutory construction and the plain language of the extended-term statute, we conclude that defendant could only properly receive an extended-term sentence for his murder conviction since it belonged to the class of the most serious offense of which he was convicted.

In *People v. Evans* (1981), 87 Ill. 2d 77, 87, 429 N.E.2d 520, our supreme court held that "[w]hen section 5—8—2(a) is read in conjunction with section 5—5—3.2, it is clear from the plain language of the statutes that [in order for an offender to receive an extended sentence] the most serious offense of which the offender is convicted must be accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." The *Evans* court also noted "that the present legislative scheme could lead to the anomalous result of insulating a defendant from receiving an extended sentence for an offense accompanied by wanton cruelty by virtue of his conviction of a more serious offense." (87 Ill. 2d 77, 88.) We believe that *Evans* supports our holding in the instant case.

The appellate court has issued conflicting opinions regarding the permissibility of multiple extended-term sentences. In *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 1150, 428 N.E.2d 937, this court held that under section 5—8—2 of the Unified Code of Corrections, an extended term may be imposed only for the most serious offense of which the offender is convicted. (Accord, *People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327; *People v. Freeman* (1982), 104 Ill. App. 3d 980, 433 N.E.2d 974.) In *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 1026, 439 N.E.2d 1311, this court held that "extended terms may be imposed for more than one offense when all of the offenses are within the class of the most serious offense committed by the defendant." However, *DeSimone* is distinguishable from the case at bar since there, defendant was convicted of two Class X felonies. Recently, in *People v. Mims* (1982), 111 Ill. App. 3d 814, 821-22, 444 N.E.2d 684, this court held that "extended term sentences may be imposed in appropriate circumstances, *for different classes of offenses*, even in those situations where the offenses are not the most serious for which an offender is convicted." The holding in *Mims*, however, is not consistent with our reading of the statute, nor, in our view, is it required by People v. Williams (No. 51870, filed April 16, 1982) (Williams I)[1] upon which the *Mims* court relied.

---

[1]The Williams I opinion was withdrawn by the supreme court. See *People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136.

Accordingly, we hold that defendant was improperly sentenced to an extended-term sentence for his armed robbery conviction. Therefore, we reduce that sentence to a term of 30 years, the maximum for a Class X felony. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(3).

For the aforementioned reasons we affirm defendant's convictions and his sentence for murder and reduce his sentence on the armed robbery conviction.

McNAMARA, P.J., and RIZZI, J., concur.