THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM R. VANDERVER *et al.*, Defendants-Appellees.

Second District   Nos. 2—86—0167, 2—86—0309 cons.

Opinion filed July 13, 1987.

James E. Ryan, State's Attorney, of Wheaton (Judith M. Pietrucha and Barbara A. Preiner, Assistant State's Attorneys, of counsel), for the People.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellees.

JUSTICE NASH delivered the opinion of the court:

The State appeals a ruling by the trial court granting a motion by defendant, William R. Vanderver, to quash his arrest for possession of burglary tools and suppress evidence. The State also appeals from the trial court's order which granted a new trial to codefendant, Cary Abeyta, and further granted his previously denied motion to quash his arrest after he had been convicted in a bench trial of possession of burglary tools. (Ill. Rev. Stat. 1985, ch. 38, par. 19—2.) On May 19, 1987, we granted the State's motion to consolidate these appeals.

At the hearing on defendants' motions two police officers from the Willowbrook police department testified. Officer Frederick Willey testified that on February 20, 1985, at 2:30 a.m., he was on patrol in the vicinity of Knollwood Road at Knoll Valley Drive. Officer Willey said that, at that time, he stopped a vehicle which defendant Vanderver was driving, and which contained a passenger, codefendant Abeyta. Officer Willey said he stopped the vehicle without an arrest warrant for the individuals in the car, and without a search warrant. A routine license check on the vehicle came back clear. Defendants were not violating any laws at the time of the stop.

Officer Willey stated that defendant Vanderver was driving an older model black Oldsmobile which was westbound on Knollwood Road from Knoll Valley when he observed the vehicle back into a parking stall in a parking lot. The car was stationary and had its lights on. The officer drove past the area, then turned around. He observed that the car had exited the stall heading east on Knollwood Road. Officer Willey was on patrol in a one-man squad although another squad was also on the scene. Extra patrols were assigned to the Knolls Apartment Complex, which was a large apartment complex, because many vehicles were reported stolen from the complex.

Office Willey said that when he first noticed defendants' car it was in the Knolls Complex parking lot and was the only vehicle in motion. Officer Willey radioed the dispatcher and found out that the car was registered in Chicago. After stopping the car, Officer Willey observed a slam hammer on the passenger side floor in the front of the vehicle. The officer was familiar with this type of tool and its use as a theft device capable of pulling ignitions to facilitate automobile theft. It was the possession of this tool that resulted in defendants being charged by information with possession of burglary tools. Ill. Rev. Stat. 1985, ch. 38, par. 19—2.

Officer Paul Oggerino, who was also on patrol at the Knolls Apartment Complex at the time defendants were stopped, testified that he was assigned foot patrol detail in the area due to numerous thefts and burglaries of automobiles at that location. As he proceeded down Knollwood westbound, he saw a slow-moving black vehicle, traveling about 15 or 20 miles per hour. The vehicle stopped and backed into a parking stall. Officer Oggerino proceeded past defendants' car and observed the car, seconds later, pull out of the parking stall and head eastbound, again at 15 or 20 miles per hour. He followed the vehicle and had radio contact with Officer Willey. There was no other traffic in the vicinity of Knollwood Road at this time, but there were numerous cars parked in the apartment complex lot.

Officer Oggerino proceeded to the place where Officer Willey had stopped defendants' car. Officer Oggerino saw a slam hammer on the floor in the front passenger side of the car, and was aware that such a tool is used to pull locks out of car ignitions and car doors. Officer Oggerino stated that at the time of the stop, the occupants of the car had not violated any laws, and there were no warrants to arrest them or to search the vehicle.

On January 28, 1986, after the hearing on defendant Vanderver's motion, the trial court concluded that on February 20, 1985, at approximately 2:30 a.m., in a large apartment complex, the police observed a vehicle in the parking lot, which was backed into a stall, immediately leave the stall and the immediate area when it was stopped. The trial court concluded that the stop was made without sufficient basis in fact. We agree with the trial court.

On March 12, 1986, the trial court reconsidered its disposition in codefendant Cary Abeyta's case and, in view of its finding regarding Vanderver's motion to quash his arrest and suppress evidence, found that it had not properly considered whether or not a lawful stop had occurred. The trial court, therefore, vacated the previous finding of guilty, granted codefendant Abeyta's motion for a new trial, and further granted codefendant Abeyta's motion to quash his arrest. The State in its brief on appeal admits that the testimony of Officer Willey and Oggerino was substantially similar in both hearings on Abeyta's motion to quash and Vanderver's motion to quash his arrest and suppress evidence, but maintains that Abeyta's motion was correctly denied and should not have been disturbed. Again, we agree with the trial court's disposition of codefendant Abeyta's motion to quash.

■ Initially, we note that the State, for the first time on appeal, suggests that the trial court erroneously considered the Vanderver case in granting defendant Abeyta's request for a new trial. This contention is waived since it was not raised in the court below. *People v. Braasch* (1984), 122 Ill. App. 3d 747, 751, 461 N.E.2d 651; *People v. Vena* (1984), 122 Ill. App. 3d 154, 165, 460 N.E.2d 886, *appeal denied* (1984), 101 Ill. 2d 576.

■ ■ The police must have a reasonable, articulable suspicion of criminal activity to justify stopping an individual. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; Ill. Rev. Stat. 1985, ch. 38, par. 107—14.) This requirement is necessary to prevent police from having absolute discretion to intrude into the lives of occupants of motor vehicles. (*People v. James* (1976), 44 Ill. App. 3d 300, 303, 358 N.E.2d 88.) A reviewing court will not disturb a trial court's finding in a hearing on a motion to suppress unless the trial

court's finding was manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766; *People v. Fox* (1981), 97 Ill. App. 3d 58, 62, 421 N.E.2d 1082.

■ The State maintains that the following facts justified the stop of defendants' car: The car, which was registered in Chicago, was being driven down a residential street in Willowbrook at a slow rate of speed at 2:30 a.m. The car stopped to change direction in an apartment complex parking lot which had been the scene of numerous car thefts. These are not facts which would give rise to a reasonably articulable suspicion of criminal activity, but rather at best amounts to a hunch. We cannot constitutionally condone such arbitrary stopping of motorists.

The cases relied upon by the State are factually inapposite. In *People v. Canity* (1981), 100 Ill. App. 3d 135, 426 N.E.2d 591, *appeal denied* (1982), 88 Ill. 2d 552, the police possessed a more justifiable suspicion that the defendant was about to engage in criminal conduct because a suspect in a sexual assault had been described as black, and the defendant, who was black, was observed to be in front of the complainant's apartment. *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, and *People v. Ellis* (1983), 113 Ill. App. 3d 314, 446 N.E.2d 1282, *appeal denied* (1983), 96 Ill. 2d 544, both involve circumstances where defendants were observed in areas where vehicles or pedestrian traffic would have been very limited. In *McGowan*, the defendant, who was dressed in black, was in a deserted commercial and industrial area. In *Ellis*, the defendant was observed in a parking lot of a shopping center when all the stores were closed.

More on point is *People v. Meitz* (1981), 95 Ill. App. 3d 1033, 420 N.E.2d 1119, *appeal denied* (1981), 85 Ill. 2d 571, which involved the same apartment complex as the instant case. In *Meitz*, the police observed the defendant driving a 1976 Chevrolet Corvette about 12 a.m. from the apartment complex parking lot. The rear window of the car was fogged and had not been cleaned. The police possessed information that late-model General Motors vehicles were frequently the target of thefts at the apartment complex. This court concluded that based on such facts, the police lacked sufficient articulable facts from which to conclude that an offense was being committed. (95 Ill. App. 3d 1033, 1034-36, 420 N.E.2d 1119.) Although this court in *Meitz* affirmed the trial court's denial of the defendant's motion to suppress on the basis of a valid checkpoint, there is no question of a valid checkpoint in this case.

Accordingly, we find that the trial court did not err in granting defendant Vanderver's motion to quash his arrest and suppress evi-

182

dence; and the court properly vacated defendant Abeyta's conviction for possession of burglary tools and granted his motion to quash his arrest.

Affirmed.

DUNN and HOPF, JJ., concur.