**Lorando John DUNCAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 91–CM–383, 91–CM–923.**

District of Columbia Court of Appeals.

Submitted Sept. 16, 1992.

Decided Jan. 29, 1993.

David J. Sitomer, Washington, DC, appointed by this court, for appellant.

Caroline Carey, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and John G. Horan, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before STEADMAN, SCHWELB, and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant, Lorando John Duncan, was convicted of possession of heroin in violation of D.C.Code § 33–541(d) (1988). He appeals his conviction on the principal ground that the trial court erred in denying his motion to suppress evidence that was discovered, in a search incident to his arrest, after he was stopped at a police traffic roadblock. Following the denial of his motion to suppress evidence and his conviction and sentencing for the drug offense, appellant filed a timely notice of appeal. Thereafter, he filed a motion for a new trial, which the trial court denied. Appellant then noted an appeal from the trial court's order denying his motion for a new trial. Both appeals have been consolidated for all purposes.

Appellant contends that the trial court's finding that the principal purpose of the roadblock was to check for drivers' licenses and vehicle registrations was clearly erroneous. Thus, he argues that the roadblock was unconstitutional and the evidence seized should have been suppressed.[1] We hold that the trial court's finding was not clearly erroneous or without evidence to support it. Accordingly, we affirm.

**I.**

The uncontroverted testimony at the suppression hearing was as follows: At approximately 11:00 p.m. on October 24, 1990, forty uniformed members of the Metropoli-

---

1. In the trial court, appellant also maintained that his statement that he did not have a driver's license did not give the police probable cause to arrest him before the results from a WALES computer check disclosed that appellant's license had been suspended. This argument was abandoned on appeal.

tan Police Department's Rapid Deployment Unit set up a roadblock at Ninth and O Streets, Northwest, to stop all cars traveling north or south on Ninth Street. Every vehicle passing through the intersection was stopped by one of the officers who asked each driver to produce a driver's license and vehicle registration. The drivers who produced valid drivers' licenses and registrations were permitted to leave. If, however, a driver could not produce a valid license and registration, and a computer check did not confirm a valid license and registration, then the driver was arrested. The procedures for, and location of, the roadblock were selected in advance by the unit's commander. Several officials were at the scene to supervise the enforcement of the roadblock.

Shortly after the roadblock was set up, Detective James Flynn, the government's sole witness at the suppression hearing, stopped appellant's car. After advising appellant that the police were conducting a roadblock, he asked appellant for his driver's license and vehicle registration. Flynn testified that appellant became "visibly upset" and acted as though he was searching his glove compartment for the license and registration. When appellant stated that he thought the license and registration were in the trunk, Flynn asked appellant to step out of the car so that appellant could search the trunk. According to Flynn, appellant appeared to search the trunk for a few minutes and then stated to the officer: "I'll tell you the truth, I don't have a driver's license." Flynn then arrested appellant for the traffic violation, and a computer check indicated that appellant's license had been suspended. A subsequent search of appellant resulted in the seizure of six packets of a white powder that was subsequently analyzed to be heroin. Appellant then filed a motion to suppress the evidence, the denial of which is the principal basis for this appeal.

According to Flynn,[2] the purpose of the roadblock was "to ascertain if the drivers stopped had a driver's license and registration for the vehicles, if they were suspended, drunk drivers, wanted drivers and to deter the drug trafficking in the area." Flynn testified the area was known to be a high drug trafficking area with particularly heavy vehicular traffic. He testified that police have found a high incidence of suspended and wanted drivers in high narcotics areas.

Defense counsel argued[3] that the roadblock was unconstitutional because there were no written instructions for the roadblock and there was no showing that the roadblock had been set up pursuant to established procedures. The government maintained that legal precedent did not mandate written orders for such roadblocks. Moreover, relying on the decisions in *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1041, 59 L.Ed.2d 660 (1979) ("[q]uestioning of all oncoming traffic at roadblock-type stops is one possible alternative [to spot checks of motorists 'involv[ing] the unconstrained exercise of discretion']") and *United States v. McFayden*, 275 U.S.App.D.C. 207, 213–214, 865 F.2d 1306, 1312–13 (1989) (roadblock constitutional where "the principal purpose of the checkpoints was to allow police to check a driver's license and vehicle registration," and not a subterfuge for detecting "crimes unrelated to licensing"), the government argued that such roadblocks were valid, that the evidence adduced at the suppression hearing clearly showed that the roadblock was authorized and predetermined, and that its principal purpose was to check for drivers' licenses and vehicle registrations.

## II.

The trial court denied appellant's suppression motion and ruled that pursuant to the decisions in *United States v. McFayden, supra,* and *Delaware v. Prouse, supra,* the roadblock was lawful. At the

---

**2.** Flynn testified that he was a sixteen-year veteran with the Metropolitan Police Department who had participated in more than fifty roadblocks.

**3.** The defense offered no evidence.

time of the trial court's ruling, however, this court had not decided the appeals in *Galberth v. United States*, 590 A.2d 990, 997 (D.C.1991) (roadblock unconstitutional where the primary purpose was to combat violence and illegal drug activity) and *Taylor v. United States*, 595 A.2d 1007, 1009 (D.C.1991) (roadblock unconstitutional where the primary purpose was to alleviate traffic congestion, and the roadblock was not shown to further that purpose).[4] In *Galberth, supra,* this court recognized that the constitutionality of a roadblock requires balancing the extent to which it intrudes on individual liberty against the gravity of the public concerns served by the roadblock. *See Galberth, supra,* 590 A.2d at 997 (citing *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)). Moreover, we held that the principal purpose underlying a roadblock must be considered to determine the constitutionality of the roadblock. *Id.* *See McFayden, supra,* 275 U.S.App.D.C. at 213, 865 F.2d at 1312. We also recognized as "substantial and legitimate" a governmental purpose to check for "expected problems of 'motorists operating without permits, operating after revocation, and operating with impaired ability to drive.'" *Galberth, supra,* 590 A.2d at 1000 (quoting *Delaware v. Prouse, supra,* 440 U.S. at 658, 99 S.Ct. at 1398 ("the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles [and] that these vehicles are fit for safe operation")).

Pursuant to our remand ruling in *Galberth, supra* note 4, we granted the government's motion to remand the record in the present case for the trial court to make further factual findings as to the principal purpose of the roadblock.

**III.**

Following our remand, the trial court credited the testimony of Detective Flynn and made the following supplemental factual findings ("Findings") in support of its ruling denying appellant's suppression motion:

> Every vehicle passing through the intersection was stopped by a uniformed officer and each driver [was] asked to produce his or her driver's license and vehicle registration. The procedures and location of the roadblock were selected in advance by the unit's commander and several officials were at the scene to supervise the enforcement of the roadblock.

Findings at 2.

In addressing the principal purpose of the roadblock, the trial court made the following ruling:

> The principal purpose of the roadblock conducted here was the same purpose identified in *United States v. McFayden*, 275 U.S.App.D.C. 207, [865 F.2d 1306], that is, the roadblock was set up to *check for driver's* [sic] *licenses and vehicle registrations.* Testimony from Detective James Flynn explained that the police have found that there is a high incidence of drivers without licenses, drivers with suspended licenses, and drivers for whom there are outstanding warrants in high narcotics areas. The police set up roadblocks in open air drug markets to identify and weed out the unlicensed and wanted drivers. Engaging in this lawful police activity, *see Delaware v. Prouse*, 440 U.S. 64[8], 658 [99 S.Ct. 1391, 1398, 59 L.Ed.2d 660] (1979), has the desired "spin-off" effect of discouraging drug users and traffickers from frequenting

---

4. The *Galberth* and *Taylor* cases were consolidated originally. *See Galberth, supra,* 590 A.2d at 991. The record in *Taylor* was remanded to the trial court for specific findings on the issue of the principal purpose of the roadblock. 590 A.2d at 1001. On remand, the trial judge made additional findings from which the court concluded that "the traffic congestion purpose was primary, and the licensing and registration purpose was secondary." *Taylor, supra,* 595 A.2d at 1009. Accordingly, upon return of the record to this court, we held that "because the primary government purpose for the roadblock was [not to check drivers' licenses and registrations, but rather] to alleviate traffic congestion, and that purpose was not shown to have been furthered by the roadblock, *see Galberth, supra,* 590 A.2d at 1000, the roadblock was unconstitutional." *Id.*

the area which in turn alleviates the traffic congestion.

Findings at 2–3 (citations omitted) (footnote omitted) (emphasis added).

## IV.

 This court has previously held that the trial court's finding as to the purpose of a roadblock is a question of fact, which we will review for clear error. *Galberth, supra,* 590 A.2d at 999 n. 12. Moreover, our scope of review of the denial of a motion to suppress evidence is limited, and deferential to the trial court's findings of fact. *Lawrence v. United States,* 566 A.2d 57, 60 (D.C.1989). In this regard, "[i]n reviewing a trial court order denying a motion to suppress, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc) (citations omitted). "[A] judge's factual findings will not be disturbed unless they are clearly erroneous, i.e., without substantial support in the record." *Lawrence, supra,* 566 A.2d at 60; *see also* D.C.Code § 17–305(a) (1989).

 Appellant is not challenging the legality of roadblocks that have the principal purpose of checking the validity of drivers' licenses and vehicle registrations. He concedes that a roadblock is constitutional where the principal purpose is to allow police to check drivers' licenses and vehicle registrations. *See McFayden, supra,* 275 U.S.App.D.C. at 213–214, 865 F.2d at 1312–14.[5] His sole and narrow contention on appeal, however, is that the trial court's finding that the principal purpose of the roadblock in the present case was to check the validity of drivers' licenses and vehicle

registrations was clearly erroneous. In our view, the trial court's finding as to the principal purpose of the roadblock is amply supported by the evidence in the record. Accordingly, finding no clear error, we must affirm the order of the trial court denying appellant's motion to suppress tangible evidence. *See Peay, supra,* 597 A.2d at 1320; *Galberth, supra,* 590 A.2d at 999 n. 12.

The trial court credited Detective Flynn's testimony that the two main purposes of the roadblock were to check for valid drivers' licenses and registrations and to check for drunk drivers. Both purposes have been held to be lawful justification for police roadblocks. *See McFayden, supra,* 275 U.S.App.D.C. at 213–214, 865 F.2d at 1312–13 (upholding the legality of a roadblock to check for licenses and vehicle registrations); *Michigan v. Sitz,* 496 U.S. 444, 455, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412 (1990) (upholding the constitutionality of highway sobriety checkpoints). Moreover, Flynn testified that pursuant to established procedures and instructions to all participating police officers, all motorists traveling north and south on Ninth Street were stopped; the roadblock was located on a major thoroughfare into the city; the officers only asked for drivers' licenses and vehicle registrations; if the requested documents were produced, the drivers were permitted to go on their way; the officers did not ask the drivers or passengers if they were carrying drugs or for permission to search the drivers, passengers, or vehicles.

Although Flynn testified that *one* purpose of the roadblock was to deter drug trafficking, and that he told Duncan that

---

5. The *Galberth* court also recognized that "[i]f the principal purpose of the roadblock were to check drivers' licenses and vehicle registration[s], we would conclude that the roadblock was constitutional." *Galberth, supra,* 590 A.2d at 1001. The court noted in *Galberth* that "[a]lthough the Supreme Court has not yet upheld the constitutionality of roadblock stops for the purpose of checking licenses and registrations, dictum in *Delaware v. Prouse* suggests that such roadblocks would be constitutional." *Id.* at 1000 (citation omitted). In this regard, the

court recognized that a number of federal and state courts have upheld such roadblocks. *Id.* at 1001 (citing *United States v. Corral,* 823 F.2d 1389, 1392 (10th Cir.1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988); *United States v. Miller,* 608 F.2d 1089, 1093 (5th Cir.1979), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3020, 65 L.Ed.2d 1119 (1980); *Smith v. State,* 515 So.2d 149, 152 (Ala.Crim.App.1987); *People v. Meitz,* 95 Ill.App.3d 1033, 51 Ill.Dec. 561, 565, 420 N.E.2d 1119, 1123 (1981); *State v. Cloukey,* 486 A.2d 143, 146–47 (Me.1985); *Miller v. State,* 373 So.2d 1004, 1005 (Miss.1979); *State v. Shan-*

"the police were conducting a road block for drug trafficking in the area," [6] he also testified that deterring drug trafficking was *not* a principal purpose of the road-block. In this regard, the trial court credited his testimony and found that deterring drug trafficking was not a principal purpose of the roadblock but, rather, a constitutional "benefit from the 'spin-off effect' of an otherwise constitutional law enforcement program." *Galberth, supra,* 590 A.2d at 997 (citing *United States v. Villmonte–Marquez,* 462 U.S. 579, 584 n. 3, 103 S.Ct. 2573, 2577 n. 3, 77 L.Ed.2d 22 (1983)). In other words, the court found that the principal purpose of the roadblock, i.e., to check for drivers' licenses and vehicle registrations, would have the desired "spin-off" effect of discouraging drug users and traffickers from frequenting the area. This finding was consistent with Flynn's testimony that on occasion, as in the present case, in roadblock operations, police will arrest a motorist for not having a driver's license or vehicle registration and, in a search of that person incident to a lawful arrest, seize illegal drugs.

We, likewise, find unpersuasive appellant's contention that the roadblock could not have been "neutrally set at this place to review licensure." Our decision in *Galberth, supra,* 590 A.2d at 997, makes clear that we will not find constitutional a roadblock that is merely a "subterfuge for detecting crimes unrelated to licensing, which

might infringe upon Fourth Amendment rights." *Id.* (citation omitted). As previously stated, however, the trial court had ample, credible, uncontroverted testimony about the policy behind and procedures for the roadblock and the reason for a roadblock at this particular location. The court credited that testimony and made a comprehensive finding that the principal purpose of the roadblock was for the same purpose identified by the court in *McFayden, supra,* that is, to check for drivers' licenses and vehicle registrations. This finding, in our view, is not clearly erroneous and is supported by the record.[7] D.C.Code § 17–305 (1989); *Peay, supra,* 597 A.2d at 1320; *Galberth, supra,* 590 A.2d at 999 n. 12.

Accordingly, the judgments appealed from are hereby

*Affirmed.*

---

*kle,* 58 Or.App. 134, 647 P.2d 959, 961–62 (1982)).

**6.** Flynn's "on the spot" reference to deterring drug trafficking as a purpose of the roadblock is troubling, for an unrehearsed statement made without litigation in mind often has a ring of truth. *Cf., e.g., Harris v. United States,* 373 A.2d 590, 593 (D.C.1977) (spontaneous statement was unlikely to have been the product of reflection); *Nicholson v. United States,* 368 A.2d 561, 564 (D.C.1977) (spontaneous statement made shortly after an attack assured the "strong likelihood of spontaneity and veracity"). In this case, the roadblock was part of Operation Clean Sweep— essentially an anti-narcotics operation. In assessing which of two statements made by a witness is more reliable, the trier of fact is well advised to consider the circumstances under which they were made. Nevertheless, we recognize that the trial court could properly consider this testimony in the total context of Flynn's

entire testimony and thereby properly conclude that deterring drug trafficking was not a *principal purpose* of the roadblock, but rather, a "benefit from the 'spin-off' effect of an otherwise constitutional law enforcement program." *Galberth, supra,* 590 A.2d at 997.

**7.** We also reject appellant's contention that the government had the burden of producing written instructions for the roadblock and should have produced the chief of police or the commander of the unit to testify about the roadblock procedures. Defense counsel never objected to Flynn's basis for his knowledge about the roadblock procedures, purposes, location, time, etc. Moreover, Flynn testified about his participation in over fifty roadblocks that were procedurally similar to the roadblock in the present case. He also testified that he received his instructions from his supervisors who were also present to ensure that the procedures were followed. Accordingly, the evidence was sufficient to support a finding that the roadblock was set up pursuant to established guidelines.