THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY QUINN, Defendant-Appellant.

First District (1st Division) No. 86—2547

Opinion filed August 1, 1988.

Steven Clark, of State Appellate Defender's Office, and McDermott, Will & Emery, both of Chicago (Dewey J. Caton, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Patricia Y. Brown, and Joseph G. Laspisa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Anthony Quinn, appeals his murder conviction and 25-year sentence to this court based on certain alleged trial court errors during his jury trial in the circuit court of Cook County. Quinn was charged with the murder of Roger Love following the fatal stabbing of Love at Denise Monroe's home on the evening of May 17, 1985. During the trial, the State called Denise Monroe; Bernadine Davis, a friend of Monroe's; Chicago police officers Zawislak and Falkenberg, who were called to the scene and who later arrested the

defendant; Chicago police officers Zefeldt and Doyle of the Chicago police crime lab; Sara Estrada, a nurse from St. Anthony's Hospital, where Roger Love was taken for emergency treatment; and Dr. Tae An, a pathologist from the Cook County medical examiner's office. The defendant did not testify but presented the testimony of William Lee, an intake clerk in the medical examiner's office; Detectives Vantilberg, Smith, and Brankin of the police crime lab; and Earl Quinn, the defendant's father. Subsequently, the jury returned a guilty verdict and the defendant was sentenced to 25 years' imprisonment.

At the trial, Denise Monroe testified that Quinn was a former boyfriend and the father of one of her four children. She stated that Quinn was living in her home, along with her current boyfriend, Roger Love, and Monroe's children. On the evening of May 17, 1985, Bernadine Davis, Monroe, and Love were playing a card game in Monroe's living room. Earlier, at the preliminary hearing. Monroe had testified that an individual known as "Dude" had also been present that evening but did not stay long after Quinn arrived. However, at trial, she admitted that she had not given this information to the investigating officers. Monroe further testified that shortly after Quinn arrived at about 8:45 p.m., he walked into the kitchen to speak with his daughter and then returned to the living room and sat on the couch. Monroe said that after about 10 minutes, Quinn got up and stood near the card table, stated "[T]onight I'm going to jail," and then plunged a knife into the right side of Roger Love's chest.

Bernadine Davis, who also testified, said that when Officer Zawislak was interviewing her in the kitchen of Monroe's apartment, Quinn returned through the back door and she said to the officer, "[T]hat's him." Officer Zawislak testified that he then pushed Quinn up against the kitchen counter and Quinn's jacket opened to reveal a leather-handled knife in a sheath inside the front waistband of his pants. Zawislak said Officer Falkenberg assisted him in arresting Quinn and they then placed Quinn in a patrol wagon, which had been called to the scene, for transportation to the police station. It was stipulated that the blood on the knife removed from Quinn's waistband was the same type as the victim's and that a second knife was recovered by the police officers operating the patrol wagon. The victim, Roger Love, was taken by ambulance to St. Anthony's Hospital, where he was pronounced dead at 10:40 that evening.

Bernadine Davis' testimony differed from Ms. Monroe's in that she stated when Quinn returned from the kitchen he stood between Monroe and Love, muttered something unintelligible, and then lunged at Love as Love sat at the card table. Both women testified that

Quinn left the apartment, after the stabbing, through the back door in the kitchen.

It was the defense theory that Monroe, Davis, and Dude had conspired to kill Love, had taken his money, and that Dude had then planted the weapon on Quinn as he was returning to the apartment. Earl Quinn, the defendant's father, testified that Anthony, who had been napping at his house, was awakened by a telephone call from an unknown male, who the defense counsel speculated to be Dude, at about 8:30 p.m. on May 17, 1985. Earl Quinn heard his son say to the caller that he'd be down and that his son then left the house. Earl Quinn also testified that his son was drunk when he left the house. An intake clerk at the medical examiner's office, William Lee, testified that Roger Love did not have any money in his possession when his body was received at the medical examiner's office, and Detective Vantilberg, of the crime lab, testified that there were no fingerprints on the recovered knives. Detective Smith, also an employee of the crime lab, stated that he found dried blood on the chair in which Love was sitting when he was stabbed but that no blood was visible on Anthony Quinn, Denise Monroe, or Bernadine Davis. Detective Brankin's testimony corroborated the State's witnesses concerning what they had told him immediately following the incident, and he also confirmed that the witnesses failed to mention the presence of Dude at the apartment.

The defendant raises several issues which he claims constituted reversible error, including the cumulative effect of certain prosecutorial remarks; the exclusion of Bernadine Davis' prior convictions; and the admission of a morgue photograph of the victim's stab wound. The defendant also asserts that he was denied effective assistance of trial counsel.

The defendant first argues that the prosecutor's closing remarks were so prejudicial as to require a reversal of his conviction. In particular, he contends that reversible error occurred by the cumulative effect of the prosecutor's remarks which he claims: (1) attempted to shift the burden of proof to the defendant; (2) were comment on the defendant's failure to testify; (3) vouched for the police officers' credibility; (4) were comment on the defendant's failure to produce a defense witness; (5) were comment on the ineptness of the public defenders; and (6) accused the defendant of maligning the character of the victim and the prosecution's witnesses.

■ The defendant contends that the State attempted to shift the burden of proof to him when, during closing argument, the prosecutor commented on the defendant's lack of proof of his defense theory. In

particular, he complains of the prosecutor's comments reminding the jury of the defendant's opening statement where the defense had argued that the evidence would show that Dude or Davis had killed Love and that the defense had not presented any evidence that Dude or Davis had killed Love. These statements, he argues, attempted to shift the burden of proof to the defendant.

However, these statements were made during closing argument in response to the defendant's theory of the case, and the prosecutor acknowledged to the jury that although, in his opinion, the defense theory remained unproved, the defendant was under no obligation to prove anything. Also, we note that the trial court here cured any error by properly instructing the jury regarding the burden of proof. (*People v. Rowe* (1983), 115 Ill. App. 3d 322, 450 N.E.2d 804.) Accordingly, we find the defendant's claim to be without merit.

 █ The defendant's second basis for error is that the prosecutor's remark, "[T]here the defendant sits with his hands folded," was an improper comment on the defendant's failure to testify in his own behalf. The defendant asserts that this comment abridged his fifth amendment right to remain silent during the trial. The defendant points to section 6 of "An Act to revise the law in relation to criminal jurisprudence" (Ill. Rev. Stat. 1985, ch. 38, par. 155—1), which provides that a defendant's failure to testify "shall not create any presumption against [him], nor shall the court permit any reference or comment to be made" as a specific Illinois law basis for his argument.

The test, however, of whether the defendant's fifth amendment guarantees were abridged is whether "the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." (*Watt v. People* (1888), 126 Ill. 9, 32, 18 N.E. 340, 350; see also *People v. Norman* (1963), 28 Ill. 2d 77, 81, 190 N.E.2d 819, 821.) Here, the defense counsel told the jury in his opening statement that "Anthony is not like you and me, ladies and gentlemen. I described him before as a kind, decent, gentleman, I should have said man-child, because Anthony is different in so many ways from us." The defendant's attorney also stated that Quinn would probably not testify because he would be subjected to difficult cross-examination by the assistant State's Attorneys and "Anthony cannot explain himself very well; does not recall things very well" and, thus, apparently could not testify even though he might desire to do so. Defense counsel told the jury that they would be able to observe the defendant during the trial and could judge the type of person the defendant was in this manner. Again, in closing statements, defense counsel reiterated the defend-

ant's inability to express himself but reminded the jury they had been able to get to know the defendant through the testimony of his family and by observing him. It was in this context that the prosecutor's comment was made.

Recently, the United States Supreme Court, in *United States v. Robinson* (1988), 485 U.S. 25, 99 L. Ed. 2d 23, 108 S. Ct. 864, held the fifth amendment only proscribes comment on the defendant's failure to testify where, in the context of the defense presented at trial, such comments are uninvited. In *Robinson*, the defense counsel had contended that the government had not given the defendant the opportunity to explain to the jury his story of innocence, and in "fair response," the government was permitted to state: "He could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, throughout, the opportunity to explain." *Robinson*, 485 U.S. at ___, 99 L. Ed. 2d at 29, 108 S. Ct. at 867; see also *Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954; *cf. People v. Mills* (1968), 40 Ill. 2d 4, 8, 237 N.E.2d 697, 700.

The defense's theory here was that Anthony Quinn was a "man-child" incapable of committing the charged offense, but because of his inability to express himself, and because of the threat of the prosecutor's cross-examination, he could not testify and explain his actions. The defense made repeated invitations to the jury to observe the defendant, obviously for the purpose of determining his innocence by his appearance. These remarks, we find, created the context referred to in *Robinson* as permitting a "fair response" by the prosecution. Thus, in rebuttal to the defendant's closing argument, the State reminded the jury of the defense counsel's description of the defendant as a "man-child" who was "different in so many ways from us" and then responded that the "kind, decent Anthony has been sitting here for four days with his hands in the same position like somebody crazy glued him there" and that "we don't know anything about this man other than what his attorney has told us." Under the circumstances of this case, we believe that this was proper comment, similar to that in *Robinson*. Further, we note that defense counsel did not pursue this argument at trial and withdrew his objection to this line of argument during the State's closing argument. Hence, this contention can also be considered waived. *People v. Barney* (1982), 111 Ill. App. 3d 658, 444 N.E.2d 534.

■ Additionally, the defendant claims that the State improperly commented on the defendant's failure to produce Dude as a witness in his behalf. "Dude" was not listed as a witness by either side and was

first injected into the case in the defendant's opening statement. The defendant in his opening statement argued that Dude may have been the killer but, in any event, whether it was Dude, Monroe, or Davis who stabbed Love, it was Dude who planted the knife on Quinn as he was returning to Monroe's apartment. This court in *People v. Kane* (1980), 81 Ill. App. 3d 641, 644, 401 N.E.2d 1310, 1312, although referring to alibi witnesses and not the alleged perpetrator of the crime with which the defendant was charged, found that it was proper for the State to comment on the defendant's failure to produce witnesses where he was the one to inject them into the case and then failed to call them as witnesses. (See also *People v. Sutton* (1977), 45 Ill. App. 3d 739, 359 N.E.2d 1132.) Here, the defendant, by first mentioning Dude, laid the foundation for the State to later comment on the witness' absence, the defendant's failure to produce him, and the defendant's assertion that it was the State's obligation to produce Dude at trial. We further note that the defendant, like the State, also had the power to subpoena available to him, and there was no indication that the defense made any effort to subpoena Dude or that they were unable to do so. Under such circumstances, we do not find that the State's comments were improper.

■ The defendant also complains that the prosecutor's comments on the ineptness of defense counsel and on the defense's alleged attack on the character of the State's witnesses were all improper and cumulatively constituted prejudicial error. We disagree. All of these remarks were in response to comments that the defense attorney had made in his closing statement and, hence, were not improper. See *People v. Horne* (1984), 129 Ill. App. 3d 1066, 1072, 473 N.E.2d 465, 469; *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.

■ Next, the defendant asserts that he was denied his sixth amendment right of confrontation when the trial court excluded evidence of Bernadine Davis' prior convictions. The defendant argues that even though *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, limits admissible convictions for impeaching a witness to those entered within the 10 years preceding their testimony, the State "opened the door" by stating in opening argument that both Monroe and Davis had "run-ins" with the law that the jury would be apprised of later. In response to the State's motion *in limine*, the trial court postponed its ruling on the admissibility of Davis' prior convictions until she was actually called as a witness. When Davis took the stand, the trial court stated that it would permit the defense to introduce a prostitution conviction from March 1976, solely because the State had

commented on her record in its opening statement. However, the State argues that this did not open the door because opening statements are not evidence, and, in any event, the defense counsel asked Davis while she was on the stand about her activity as a prostitute and drug dealer, and whether she was currently a prostitute or drug dealer, and then continually referred to her as a prostitute and drug user throughout the trial, although she had stated in her testimony that she had ceased using drugs and prostituting herself. Accordingly, the record reveals that the defendant was able to confront Davis concerning her prior criminal conduct despite the court's ruling as to the admissibility of her prior convictions.

Nevertheless, relying on *People v. Bey* (1969), 42 Ill. 2d 139, 246 N.E.2d 287, the defendant contends that the trial court committed error because a negative inference was created that Davis merely had an isolated conviction in her record, since he was not allowed to cross-examine Davis concerning her other offenses. In *Bey*, the defendant testified on direct examination that he had one prior conviction since his second conviction was pending on appeal at the time of his testimony. The *Bey* court held that the trial court properly permitted cross-examination as to the second conviction because the defendant had, in effect, denied that other convictions existed and, thus, opened the door for his own impeachment. (*Bey*, 42 Ill. 2d at 147, 246 N.E.2d at 292.) However, unlike *Bey*, the convictions which the defendant sought to admit were beyond the 10-year period permitted by *Montgomery* and there is no basis for an exception to that rule here. (See *People v. Walker* (1987), 157 Ill. App. 3d 133, 510 N.E.2d 29.) Additionally, unlike *Bey*, Davis did not attempt to hide her criminal past and, on cross-examination, she admitted to prostitution, drug use, and the use of aliases; hence, the defendant's ability to impeach Ms. Davis was not prejudiced by the court's ruling. Consequently, we find the defendant's contention that the trial court committed reversible error when it refused to allow the admission of all of Davis' prior convictions is without merit.

■ Defendant also argues that the trial court abused its discretion when it allowed a morgue photograph showing the deceased's gaping chest wound to be admitted into evidence. It is well settled that the determination of whether a photographic exhibit should be admitted into evidence is within the trial court's discretion and will not be disturbed on review absent a clear abuse of that discretion. (*People v. Greer* (1980), 79 Ill. 2d 103, 117, 402 N.E.2d 203, 209.) Here, the photograph corroborated the testimony of Davis and Monroe concerning the location of the wound, and also corroborated the

pathologist's testimony concerning the cause of the victim's death. Thus, it was proper for the trial court to admit this evidence over the defendant's objections. Collaterally, we note that the defendant has failed to provide this court with a copy of the photograph, and, thus, it is also proper, under such circumstances, to presume that the trial court acted within its discretion in admitting the photograph. See *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.

■ Finally, defendant asserts that he was denied effective assistance when the public defenders representing him at trial failed to offer a defense of intoxication; failed to investigate a possible defense witness; failed to make objections during the prosecutor's closing argument; and were generally unprepared. In particular, the defendant alleges that his trial attorneys' unpreparedness was exhibited when they failed to make objections during the State's closing arguments. The record, however, shows that trial counsel made 18 objections during closing arguments and that their conduct met the minimal standards for competence set by *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Moreover, the trial court has broad discretion in determining the propriety of closing arguments. (*People v. Perez* (1983), 113 Ill. App. 3d 143, 149, 446 N.E.2d 1229, 1234.) An ineffective assistance of counsel claim requires a showing that but for counsel's unprofessional errors, the result of the proceeding would have been different. (See *People v. Hillenbrand* (1988), 121 Ill. 2d 537, 548, 521 N.E.2d 900, 904-05.) The evidence offered here concerning trial counsel's unpreparedness and their conduct during the State's closing argument fails to meet the *Strickland* test of ineffective assistance and certainly does not indicate the result would have been different, in view of the strong evidence of defendant's guilt.

■ Defendant further argues that he received ineffective assistance when his attorneys failed to investigate and present a defense of voluntary intoxication in order that a jury instruction on involuntary manslaughter (Illinois Pattern Jury Instructions, Criminal, Nos. 7.07, 7.08 (2d ed. 1971)) might have been offered on his behalf. Defendant concedes, however, that this type of claimed error is more amenable to a post-conviction petition, particularly where the evidence in the record is admittedly insufficient to meet the standard for showing reduced capacity. (See, *e.g., People v. Wright* (1986), 111 Ill. 2d 18, 25-26, 488 N.E.2d 973, 977.) Additionally, the decision to not pursue an intoxication defense may legitimately be a matter of trial strategy. (*People v. Lewis* (1981), 97 Ill. App. 3d 982, 423 N.E.2d 1157.) To show that the failure to present evidence of intoxication and drug ad-

diction was not a matter of trial strategy, the defendant must show that his defense counsel failed to even investigate a potential diminished capacity defense. (*People v. Winchell* (1987), 159 Ill. App. 3d 892, 512 N.E.2d 1298.) Here, the only evidence of defendant's possible incapacity on the night of the offense was the testimony of his father, who stated that his son had developed a problem with alcohol in the Navy, had trouble holding down a job because of his drinking, and was drunk on the night of May 17, 1985. Additionally, the defendant's presentence investigation revealed a previous history of addiction to "T's and blues" following his service in the Navy and that he had unsuccessfully sought treatment for these problems at a local Veteran's Administration hospital. We do not find this scant evidence a sufficient basis for a required defense of reduced capacity because of intoxication.

In *People v. Hillenbrand* (1986), 146 Ill. App. 3d 1075, 497 N.E.2d 798, the defendant's father, sister, and friend testified at trial that they thought the defendant was intoxicated at the time of the crime. This belief, however, like the case here, was contradicted by the investigating detectives' interviews with the defendant immediately following the offense, and the testimony here concerning the defendant's appearance and demeanor indicated that the defendant was sober at the time he committed the offense. Additionally, there was no corroboration of such a defense by any laboratory reports. It is, thus, appropriate to observe here, as was observed by the court in *Hillenbrand*, "[f]rom this evidence it cannot be surprising defendant's attorney did not consider voluntary intoxication a viable defense." (*Hillenbrand*, 146 Ill. App. 3d at 1080-81, 497 N.E.2d at 801, *aff'd* (1988), 121 Ill. 2d 537, 521 N.E.2d 900.) Mere conjecture about a potential defense is insufficient to establish ineffective assistance of counsel. *People v. Winchell* (1987), 159 Ill. App. 3d 892, 512 N.E.2d 1298; *cf. People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973.

For the above stated reasons, we affirm the murder conviction and 25-year sentence entered by the circuit court of Cook County against the defendant, Anthony Quinn.

Judgment affirmed.

CAMPBELL, P.J., and MANNING, J., concur.