**UNITED STATES of America ex rel., Henry C. HILLENBRAND, Petitioner,**

**v.**

**Thomas F. PAGE, Warden of Menard Correctional Center, Respondent.**

**No. 96 C 630.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 28, 1997.

Henry C. Hillenbrand, Menard, IL, pro se.

Penelope Moutoussamy George, Arleen C. Anderson, Attorney General's Office, Chicago, IL, for Thomas F. Page and Illinois State Attorney General.

## *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. For the following reasons, the petition is denied.

### I. BACKGROUND

On October 19, 1970, Petitioner, Henry C. Hillenbrand ("Hillenbrand"), pleaded guilty to two counts of murder. For Hillenbrand's guilty plea, the State promised not to seek the death penalty. The State charged Hillenbrand for the murder of George Evans ("Evans") and Patricia Pence ("Pence"). At the plea hearing, Hillenbrand agreed with the State's recitation of the facts.

Hillenbrand admitted that on June 29, 1970, he went to Evans' home around 7:00 in the morning, armed with a .22 caliber rifle.

Hillenbrand found Evans in bed with his former girlfriend, Pence. Hillenbrand fatally shot Evans in the head, and then abducted Pence to his residence. At his house, Hillenbrand struck Pence over the head with the stock of the rifle with such force that the rifle's stock broke off. When Pence attempted to escape, Hillenbrand fatally shot her in the back. Several witnesses saw Hillenbrand shoot and kill Pence.

Prior to his sentencing in October 1970, Hillenbrand escaped from the LaSalle County jail. On May 2, 1983, Hillenbrand was recaptured in St. Louis, Missouri, and returned to LaSalle County jail. Following his recapture, Hillenbrand filed a motion to withdraw his guilty plea and argued that: (1) his counsel failed to investigate and advise him of the possibility of a voluntary intoxication defense ("ineffective assistance of counsel"); and (2) his counsel's prior representation of Pence's parents on various occasions, and his counsel's alleged involvement with a related dram shop action caused his counsel to labor under a conflict of interest ("conflict of interest"). (*See* Resp't Answer at 3.)

The trial court denied the motion to withdraw Hillenbrand's guilty plea and sentenced him on February 24, 1984, to a term of 80 to 240 years of imprisonment for the murder of Pence, to be served consecutively to a term of 50 to 150 years of imprisonment for the murder of Evans. Hillenbrand is currently in the custody of the Respondent, Warden Thomas F. Page ("Page"), at the Menard Correctional Center in Menard, Illinois.

Hillenbrand then appealed to the Illinois Appellate Court and raised the following claims of error: (1) the trial court's refusal to withdraw his guilty plea based on ineffective assistance of counsel and conflict of interest; and (2) the trial court's imposition of aggregate minimum sentences exceeding twenty-eight years. *See id.* at 4.

On August 22, 1986, the appellate court rejected Hillenbrand's claims of error based on ineffectiveness of counsel and conflict of interest, and affirmed the trial court's denial of Hillenbrand's motion to withdraw his guilty plea. *See People v. Hillenbrand,* 146 Ill.App.3d 1075, 100 Ill.Dec. 620, 625, 497 N.E.2d 798, 803 (1986). However, the appel-

late court reversed the trial court's imposition of an aggregate sentence exceeding twenty-eight years, and remanded the case to the trial court with direction to impose concurrent sentences. *Id.* On October 2, 1986, the appellate court denied Hillenbrand's motion for rehearing. *Id.* 100 Ill.Dec. at 620, 497 N.E.2d at 798.

Thereafter, both the State and Hillenbrand filed petitions for leave to appeal to the Illinois Supreme Court. On February 6, 1987, the Illinois Supreme Court granted both petitions. *See People v. Hillenbrand,* 113 Ill.2d 580, 106 Ill.Dec. 51, 505 N.E.2d 357 (1987). In Hillenbrand's petition, he argued that the trial court erred in refusing to withdraw his guilty plea based on: (1) ineffective assistance of counsel; and (2) conflict of interest. *See People v. Hillenbrand,* 121 Ill.2d 537, 118 Ill.Dec. 423, 425–27, 521 N.E.2d 900, 902–04 (1988). The State raised the claim that the appellate court erred in ordering concurrent sentencing. *Id.* 118 Ill.Dec. at 423, 521 N.E.2d at 909. On March 23, 1988, the Illinois Supreme Court affirmed the appellate court's judgment in its entirety, and remanded the case to the trial court for sentencing consistent with the appellate court's decision. *Id.* at 435, 521 N.E.2d at 912.

Hillenbrand then filed the instant petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. In his petition, Hillenbrand argues that his conviction should be vacated and he should be allowed to withdraw his guilty plea based on: (1) ineffective assistance of counsel; and (2) conflict of interest.

## II. DISCUSSION

■ Before a federal court can consider a petition for writ of habeas corpus, a petitioner must have exhausted all available state remedies. *See Momient–El v. DeTella,* 118 F.3d 535, 538 (7th Cir.1997). In addition, the petitioner must have raised all his claims during the course of the state proceedings, so as not to be procedurally defaulted. *Id.* at 541. If a petitioner has failed to satisfy either of these requirements, the petition is barred. *Id.* at 538, 541.

■ A petitioner exhausts his state remedies by presenting his claims to the highest state court for a ruling on the merits, *id.* at 538, or "when the claims could not be brought in state court because no remedies remain available at the time the federal petition is filed[,]" *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir.1991) (citations omitted). In the instant case, Page concedes, and the record shows, that Hillenbrand has exhausted his state remedies. (*See* Resp't Answer at 2.) Thus, the court turns to whether Hillenbrand is procedurally defaulted from filing the instant petition.

■ Procedural default occurs when: (1) a petition to the federal court includes new claims that the petitioner failed to raise at the state level, *see Momient–El,* 118 F.3d at 540–41; or (2) the state court declined to address a claim because the petitioner failed to comply with a state procedural requirement, *see Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991). In the instant case, Page concedes that the claims raised in Hillenbrand's habeas petition were properly raised at the state court level. Accordingly, Hillenbrand is not procedurally defaulted from raising his claim that the trial court erred in denying his motion to withdraw his guilty plea.

■ Although Hillenbrand has exhausted his state remedies and no procedural default exists, his petition must still be denied on the merits. First, the court will address whether the newly enacted Antiterrorism & Effective Death Penalty Act of 1996 ("AEDPA") applies to the present case. The AEDPA was enacted on April 24, 1996. The AEDPA redesignated the former § 2254(d), which dealt with state courts' findings of fact, as § 2254(e), and added a new § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light

**1120**

of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996), *as amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1219 (1996).

In most cases, a court may apply the new law in force at the time of decision. *See Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 1496–97, 128 L.Ed.2d 229 (1994) (discussing retroactivity of statutes). However, a court cannot apply a law retroactively unless expressly authorized by Congress. *Id.* Therefore, the court must address whether Congress authorized the retroactive application of the AEDPA. The United States Supreme Court recently addressed whether the AEDPA applies retroactively in *Lindh v. Murphy,* — U.S. —, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The *Lindh* Court found that Congress did not authorize the retroactive application of the AEDPA. *See id.* at —, 117 S.Ct. at 2061. Furthermore, the Court held that § 2254(d) is not applicable in noncapital cases, if the cases were pending before Congress passed the AEDPA. *Id.*

Relying on *Landgraf,* Page argues that the AEDPA applies to the instant case. (*See* Resp't Answer at 6–7.) Hillenbrand filed his petition on February 1, 1996, two months prior to the enactment of the AEDPA. Thus, this action was pending before the court when the AEDPA went into effect. In light of *Lindh,* the court finds that AEDPA does not apply to the instant case. *See* — U.S. at —, 117 S.Ct. at 2061.

Consequently, Hillenbrand's petition must be reviewed under the former habeas corpus provisions. Prior to the enactment of the AEDPA, the only standard available was § 2254(a) which provided that a writ of habeas corpus may issue "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The former habeas corpus provisions simply provided for a habeas remedy for those held in custody in violation of federal law. *See Lindh,* — U.S. at —, 117 S.Ct. at 2066. The court will

address each issue Hillenbrand raises in the instant petition on the merits.[1]

■ Hillenbrand's first ground for habeas relief is that he had ineffective assistance of counsel. In order to prevail, Hillenbrand must satisfy a two-pronged test: first, he must demonstrate that his counsel's performance fell below an objective standard of reasonableness; and second, he must demonstrate that, but for the deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). "Both components are necessary, as the lack of either is fatal." *Eddmonds v. Peters,* 93 F.3d 1307, 1313 (7th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1441, 137 L.Ed.2d 548 (1997).

As to the first prong of the test outlined in *Strickland,* a habeas corpus petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Furthermore, Hillenbrand must establish that his counsel's performance fell below "an objective standard of reasonableness" based upon "prevailing professional norms." *See United States v. Mojica,* 984 F.2d 1426, 1452 (7th Cir.1993). There exists a strong presumption that a criminal defendant's counsel provided reasonable professional assistance. *See Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66. Thus, judicial scrutiny of counsel's performance must be highly deferential. *Id.*

Hillenbrand first argues that his trial attorney was ineffective for failing to adequately investigate and advise him of the defense of voluntary intoxication. (*See* Pet. Reply at 4.) In Illinois, voluntary intoxication is a defense to a specific intent offense, but does not apply to criminal activity unless the intoxication makes impossible the existence of a mental state that is an element of the crime. *See* 720 ILCS 5/6–3(a) (West 1992); *Patrasso v. Nelson,* 121 F.3d 297, 302–03 (7th Cir.1997). "[T]he degree of intoxication which will absolve the defendant of responsi-

---

1. Hillenbrand does not challenge the trial court's statement of the facts. Therefore, the facts are presumed correct for purposes of the court's review. *See Walls v. DeTella,* No. 94 C 6749, 1997 WL 534287, at *1 (N.D.Ill. Aug.19, 1997).

bility for his criminal conduct must be so extreme that it suspended entirely the power to reason ... or rendered the defendant wholly incapable of forming the requisite intent to commit the crime in question." *See Patrasso*, 121 F.3d 297, 302–03 *(quoting People v. Crosser*, 117 Ill.App.3d 24, 72 Ill.Dec. 604, 608, 452 N.E.2d 857, 861 (1983)); *see also People v. McCoy*, 281 Ill.App.3d 576, 217 Ill.Dec. 136, 141, 666 N.E.2d 805, 810 (1996).

In the instant case, the record shows that Hillenbrand's trial counsel was aware of the possibility of a voluntary intoxication defense and conducted a reasonable and adequate investigation into the worth of such a defense. *See People v. Hillenbrand*, 121 Ill.2d 537, 118 Ill.Dec. 423, 431–32, 521 N.E.2d 900, 908–09 (Ill.1988). Based on his investigation, including tracking down medical records and laboratory results relating to his blood alcohol level, Hillenbrand's trial counsel rejected the voluntary intoxication defense. Hillenbrand's trial counsel concluded that there was not enough evidence to support the assertion that Hillenbrand did not have the requisite mental state due to the consumption of alcohol.

The mere fact that Hillenbrand was drunk or intoxicated does not constitute a defense of intoxication. *See Patrasso*, 121 F.3d at 302–03. Yet, Hillenbrand argues that he would have been able to meet the threshold set forth in the Illinois statute based upon Dr. Salama's laboratory results. *(See Pet. Reply at 6–7.)* The record shows that Dr. Salama drew Hillenbrand's blood more than 48 hours after ingestion of the alcohol. *See Hillenbrand*, 118 Ill.Dec. at 430, 521 N.E.2d at 907. Dr. Salama concluded that no conclusions could be drawn from the blood samples. *Id.* The record further shows that both the bouncer from the bar where Hillenbrand claimed to be drinking that night and the detective who interviewed Hillenbrand following his arrest testified at the aggravation hearing that Hillenbrand was not intoxicated. *Id.* at 431, 521 N.E.2d at 908. Thus, Hillenbrand's trial counsel's decision to forgo the use of the voluntary intoxication defense was a strategic decision well within the range of professionally reasonable judgment. *See Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065–66.

Since Hillenbrand has not satisfied the first prong under *Strickland*, the court need not continue to address his ineffective assistance of counsel claim. *See Eddmonds*, 93 F.3d at 1313; *see also Milone v. Camp*, 22 F.3d 693, 703–04 (7th Cir.1994) (stating that if the petitioner fails to meet one *Strickland* prong, the court need not address the other). Nevertheless, the court finds that Hillenbrand would have failed on the second prong as well.

In order to satisfy the second *Strickland* prong, Hillenbrand must show that there was a reasonable probability that the outcome of his trial would have been different. *See Wright v. Gramley*, 125 F.3d 1038, 1041–42 (7th Cir.1997). The Seventh Circuit has defined reasonable probability as "one sufficient to undermine confidence in the outcome." *Id.* To determine whether the result of the proceeding would have been different, the court must not only look to the outcome, but also to whether the result was fundamentally unfair. *See Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993).

As the court previously stated, Hillenbrand would not have prevailed on a defense of voluntary intoxication. *See Patrasso*, 121 F.3d at 302–04. There is not enough evidence to support Hillenbrand's claim that he was intoxicated to the point that he did not possess the mental state necessary to commit the crime in question. *Id.; McCoy*, 217 Ill. Dec. at 141–42, 666 N.E.2d at 810–11. On the contrary, Detective Donald Haage testified that following his arrest, Hillenbrand recapitulated what happened that night and confessed to shooting both Evans and Pence. By giving that confession to the police, Hillenbrand implicitly admitted remembering the crime. *See Shepherd v. Welborn*, 848 F.Supp. 1379, 1387 (N.D.Ill.1994). If Hillenbrand had gone to trial on that defense alone, it is unlikely he would have been found not guilty. *See Patrasso*, 121 F.3d 297 at 302–03. Consequently, the court rejects the claim that the trial court erred by rejecting Hillenbrand's motion to withdraw his guilty plea because he did not suffer from ineffective assistance of counsel. *Id.* at 303–04.

■ Hillenbrand's second ground for habeas relief is that his attorney labored under a conflict of interest. When representing a criminal defendant, the counsel's function is to represent the defendant. *See Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65 (1984) (*quoting Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 1716–17, 64 L.Ed.2d 333 (1980)). Counsel owes the client a duty of loyalty and, therefore, a duty to avoid conflicts of interest. *Id.* It is well established that a counsel who has divided loyalties cannot effectively represent a defendant. *Id.* at 688, 104 S.Ct. at 2064–65; *see also Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Holloway v. Arkansas,* 435 U.S. 475, 480, 98 S.Ct. 1173, 1176–77, 55 L.Ed.2d 426 (1978). Prejudice is presumed "if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

Until the defendant shows that his counsel actively represented conflicting interests, "he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719. One can show that his counsel "actively" represents conflicting interests by presenting "evidence of counsel's 'struggle to serve two masters.'" *Id.* For instance, if an attorney represents co-defendants whose interests conflict at the same trial, he is actively representing conflicting interest. *Id.* at 345, 100 S.Ct. at 1716–17.

If the trial court knows or reasonably should know that the defendant's counsel actively represents conflicting interests, the trial court must adequately inquire into the potential conflict. *Holloway,* 435 U.S. at 484–91, 98 S.Ct. at 1178–82; *Spreitzer v. Peters,* 114 F.3d 1435, 1450 (7th Cir.1997); *see also Spreitzer v. Peters,* 118 F.3d 1211, 1211 (7th Cir.1997) (Rovner, J., dissenting). Otherwise, a review court will "presume that the [mere] possibility for conflict has resulted in ineffective assistance of counsel." *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718.

Hillenbrand argues that his trial counsel actively represented conflicting interests because his counsel was also representing one of his victim's parents. When Hillenbrand first presented his allegation that his counsel labored under a conflict of interest, the record reflects that the trial court conducted a thorough inquiry into that allegation. *See Hillenbrand,* 100 Ill.Dec. at 623–24, 497 N.E.2d at 801–02; *see also Spreitzer,* 118 F.3d at 1211 (stating that *Holloway* requires the trial court to adequately inquire into any conflict of interest brought to the attention of the court). The record shows that the trial court found that, at one time, Hillenbrand's counsel represented Pence's parents. *See Hillenbrand,* 100 Ill.Dec. at 623–24, 497 N.E.2d at 801–02. However, the record further shows that Hillenbrand's counsel's representation of Pence's parents ceased before his representation of Hillenbrand began. *Id.* Hillenbrand does not offer any evidence to contradict this fact.

Since counsel was not representing Pence's parents at the time of his representation of Hillenbrand, counsel was not actively representing conflicting interests. *See Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719. As such, Hillenbrand cannot show that his counsel was actively representing conflicting interests, much less that it adversely affected his counsel's performance. Therefore, Hillenbrand has failed to establish "the constitutional predicate for his claim." *Id.* Accordingly, the court rejects Hillenbrand's claim that the trial court erred by denying his motion to withdraw his guilty plea because his trial counsel did not labor under a conflict of interest.

### III. CONCLUSION

For the foregoing reasons, the court denies Hillenbrand's petition for a writ of habeas corpus.

IT IS SO ORDERED.