2025 IL App (1st) 242015-U

No. 1-24-2015

Order filed November 26, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC1 114941-01 |
| | ) | |
| JOSE SANCHEZ, | ) | Honorable |
| | ) | Clarence L. Burch, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed over his contentions that (1) in rebuttal closing argument the State misstated the law and improperly shifted the burden of proof, and (2) the trial court abused its discretion in overruling defendant's objection to the State's comment.

¶ 2    Following a jury trial, defendant Jose Sanchez was found guilty of possessing a concealed firearm while under the influence of alcohol (430 ILCS 66/70(d) (West 2022)) and sentenced to one year of misdemeanor probation. On appeal, Mr. Sanchez contends that, in rebuttal closing

argument, the State misstated the law and improperly shifted the burden of proof in stating that the defense had the burden to prove necessity and self-defense, and the trial court abused its discretion in overruling Mr. Sanchez's objection to the State's comment. For the reasons that follow, we affirm.

¶ 3    Mr. Sanchez was charged via felony complaint with unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) and via two misdemeanor complaints with violating two subsections of the Firearm Concealed Carry Act (Act) (430 ILCS 66/70(d), (e) (West 2022)). The State proceeded on the misdemeanor charge alleging that, in violation of section 70(d) of the Act, Mr. Sanchez possessed a concealed firearm while under the influence of alcohol.

¶ 4    Prior to trial, Mr. Sanchez filed a motion *in limine* seeking, among other things, to preclude "[a]ny attempt by the prosecutor to shift the burden to the Defendant." The trial court granted that portion of the motion. Mr. Sanchez also gave notice of his intention to raise the affirmative defenses of necessity and self-defense. The State did not object to Mr. Sanchez raising necessity, but argued that self-defense was inappropriate where the alleged violation of the Act did not involve force. Defense counsel responded that "force" had many definitions, that Mr. Sanchez possessed the firearm to protect himself, and that the court would "hear testimony from the defendant about this because that is our burden." The court, noting that Mr. Sanchez "knows he has the burden of proving *** affirmative defenses" by presenting "some evidence," stated that it would rule on whether a self-defense instruction was appropriate once Mr. Sanchez had presented his case.

¶ 5    During *voir dire*, the court admonished the potential jurors, among other things, that Mr. Sanchez was presumed innocent of the charges, that the State was required to prove his guilt

beyond a reasonable doubt, and that he was not required to offer evidence on his own behalf. The potential jurors collectively answered that they understood each principle.

¶ 6     In opening statement, the State argued that Mr. Sanchez had violated the Act by carrying a firearm while under the influence of alcohol. Defense counsel argued that the case was not "about alcohol," but "about whether or not [Mr. Sanchez] had the right to defend himself that evening."

¶ 7     Chicago police officer Timothy Black testified that at about 10:45 p.m. on December 7, 2023, he responded to a call of a person with a firearm. When he arrived at the address, Mr. Sanchez, whom Officer Black identified in court, waved and said, "I called, you're looking for me. I have a CCL [(Concealed Carry License)]." Mr. Sanchez pointed at a firearm on the sidewalk and stated it was his. Officer Black recovered the firearm, which was loaded, as well as a holster that was on the ground next to a vehicle. Mr. Sanchez related that while he was in a nearby bar, an "altercation" occurred. He left the bar, went to his vehicle, and retrieved his firearm. The only person Officer Black saw "around" Mr. Sanchez was Mr. Sanchez's friend.

¶ 8     Mr. Sanchez appeared extremely agitated and intoxicated. Officer Black believed Mr. Sanchez was under the influence of alcohol because of his demeanor, his difficulty standing still, and the odor of alcohol from his breath. In addition, Mr. Sanchez admitted that he was too intoxicated to drive. However, Mr. Sanchez declined field sobriety tests. Officer Black determined that Mr. Sanchez's CCL was valid and arrested him.

¶ 9     Video captured by Officer Black's body-worn camera was published. The video is not included in the record on appeal. According to Officer Black, Mr. Sanchez stated in the video that he had consumed "a couple" cocktails, that he did not drive away from the scene because he had been drinking, and that, instead of driving away, he retrieved his firearm. From speaking with Mr.

Sanchez, Officer Black understood that Mr. Sanchez "grabbed his gun because he believed he needed to defend himself even though he left the altercation entirely already."

¶ 10 On cross-examination, Officer Black agreed that Mr. Sanchez said people followed him from the bar. Officer Black also agreed that, because Mr. Sanchez was intoxicated, it would have been illegal and dangerous had he driven away. On redirect, Officer Black stated that he did not observe injuries on Mr. Sanchez.

¶ 11 Leon Jasso testified for the defense that, on the night in question, he met Mr. Sanchez, his longtime friend, at a bar. Between 70 and 100 people were present. While Mr. Jasso was playing pool, people gathered around Mr. Sanchez's table, 15 to 20 feet away. Mr. Jasso heard cursing over the bar's loud music, which "seemed like verbal altercation or argument." He approached the group and saw Mr. Sanchez arguing with a man sitting at the table behind him.

¶ 12 Mr. Jasso observed at least seven people at the table behind Mr. Sanchez and 10 to 15 people surrounding Mr. Sanchez's table. Mr. Sanchez stood up and told Mr. Jasso that a "guy" was "saying stuff." Mr. Jasso tried to separate people and tell them to calm down, but someone hit Mr. Sanchez from behind. Mr. Sanchez left the bar. When he did not return after about five minutes, Mr. Jasso went outside to look for him.

¶ 13 Mr. Jasso saw Mr. Sanchez at the end of the block near his car. About 15 people just outside the bar were yelling at Mr. Sanchez. One man "kept getting closer and closer" to Mr. Sanchez, until he was about 15 feet away. The man had his hands behind his back, which led Mr. Jasso to assume he had a weapon. Mr. Jasso told the man and the others to "leave it alone" and go inside the bar. Mr. Sanchez, who was holding a firearm, asked Mr. Jasso to "Tell him to get back." Mr. Jasso did so, and, after about 10 seconds, the man walked away and the group dispersed. Mr.

Sanchez called 911 and placed his firearm on the ground. On cross-examination, Mr. Jasso agreed that he did not see a weapon on anyone other than Mr. Sanchez.

¶ 14    Mr. Sanchez testified that, at the time of his arrest, he had a valid CCL. On the night in question, he drove to the bar to meet Mr. Jasso. Mr. Sanchez left his firearm in the glove box of his vehicle. During the evening, Mr. Sanchez had about three drinks. At one point, he was at a table with some women. When a man at an adjacent table kept trying to talk to one of the women, Mr. Sanchez told him to leave her alone. According to Mr. Sanchez, the man "didn't like that. So then that's when we got into an altercation, he got in my face. He struck me. After he did that, then I started fighting with him." Mr. Sanchez clarified that the man hit him first, in the face. In response, Mr. Sanchez hit the man "a couple times." The man fell to the ground. Mr. Sanchez then felt blows to his head and his back, but could not tell who or how many people were striking him. Fearing that he would be stabbed, he left.

¶ 15    Mr. Sanchez walked down the block to his vehicle. When he looked back, he saw six to eight men, including the man who hit him, walking toward him. The group was yelling expletives and saying things like, "What's up now." Mr. Sanchez believed the group would "jump" him. When the men were seven or eight feet away, Mr. Sanchez retrieved his firearm from his glove box "to try to deter them from jumping [him]." He stated:

>       "So at that point, you know, I had the option. I could have ran, but I am not the most agile guy, so I didn't know—I didn't think I could get away from them. So the only thing I had in my back pocket was I had my firearm, so I grabbed my firearm out of the vehicle."

¶ 16     Mr. Sanchez testified that he never intended to discharge his firearm. He removed it from its holster, displayed it, and told the group to get back or he would "have to use deadly force." The group initially stayed on the sidewalk, yelling at him, but eventually left. Mr. Sanchez opined that, had he not grabbed his firearm from his vehicle, he would have suffered "some grave bodily harm, maybe even death."

¶ 17     On cross-examination, Mr. Sanchez clarified that his firearm was on his hip when he left his house to go to the bar, and that he secured it in his glove box before exiting his vehicle. He drove to the bar even though he knew he would be drinking there. He did not see any weapons in the bar. He acknowledged that, in his CCL training, he was taught that one "absolutely cannot have [a] gun when you have been drinking," yet he chose to put his firearm in his vehicle when he knew he would be drinking at a bar, and then retrieved that firearm after drinking. When he left the bar, he could have walked home, taken a rideshare, or called a family member. However, "[e]verything happened so fast, there was no time to stop and call the police" before the group dispersed. Mr. Sanchez told the police he had been drinking and refused field sobriety tests.

¶ 18     On redirect examination, Mr. Sanchez stated that after he left the bar, less than a minute passed before the group followed him outside. His vehicle was parked "four to five storefronts" from the bar. His initial plan for the evening was to take a rideshare home and return for his vehicle the next morning. He retrieved his firearm because he was "kind of scared" that he would "get jumped." When asked by defense counsel, "Kind of scared or you were scared?" Mr. Sanchez answered that he was scared.

¶ 19     At the jury instruction conference, defense counsel proposed instructions on necessity and self-defense. Counsel argued the necessity instruction was warranted because Mr. Sanchez had "to

break the law in order to protect himself from serious injury." The State objected, countering that necessity was not applicable because no other weapons were visible and Mr. Sanchez "left the situation entirely" before retrieving his firearm. The trial court granted the defense request for a necessity instruction. The State also objected to the defense's request for a self-defense instruction, arguing "there was no use of force." Defense counsel responded that "force" included "threat of force," and that both Mr. Sanchez and the group of men made threats. The trial court allowed the self-defense instruction.

¶ 20    In closing argument, the State told the jury that the State had the "burden *** to prove to you beyond a reasonable doubt four propositions": (1) that Mr. Sanchez was a licensee; (2) that he carried a concealed handgun; (3) that, when he did so, he was under the influence of alcohol; and (4) that he did not act out of necessity, nor was he justified in using force. The State argued that Mr. Sanchez had admitted the first three propositions.

¶ 21    As to the fourth proposition, the State asserted that, while Mr. Sanchez contended that his actions were justified, "This is not so." The State argued that several circumstances surrounding the incident were unknown, including who started the altercation, how many people were involved, and who threw the first punch. The State then highlighted that, although Mr. Sanchez knew he could not carry a firearm while intoxicated, he chose to retrieve his firearm from his glove box instead of calling law enforcement, walking home, or calling for a ride.

¶ 22    Defense counsel began by commenting on the State's reference to unknowns, stating:

        "I want to start off addressing a statement that the State just made a second ago
        about all the things that we supposedly don't know. There are claims that we don't know
        what happened in the bar. You know, we don't know who hit whom first, et cetera. I want

to make something clear here. The burden is on the State. It's on this table to prove beyond a reasonable doubt that he committed this crime. So when they have facts that they don't know, that's on them. That hurts their case. That hurts their ability to prove beyond a reasonable doubt."

¶ 23    Counsel continued, arguing that, "even though it is not the defense's burden," Mr. Sanchez called witnesses to tell the story of what happened. Counsel highlighted that both Mr. Sanchez and Mr. Jasso testified that Mr. Sanchez was struck first, and reviewed the testimony regarding the group of men who followed Mr. Sanchez outside.

¶ 24    Counsel acknowledged that the State proved Mr. Sanchez was a licensee. However, counsel argued that the State had not proven that the firearm was concealed, that Mr. Sanchez was under the influence of alcohol, or that his actions were not justified by necessity or self-defense. Counsel reminded the jury, "If the State fails to meet any of these propositions, you have to find him not guilty." Finally, counsel argued to the jurors that, even if they believed Mr. Sanchez was impaired by alcohol, they would have to consider whether he was "justified in these actions acting out of necessity *** or self-defense."

¶ 25    In rebuttal, the State asserted it had proven each proposition challenged by Mr. Sanchez. First, the firearm was concealed where Mr. Sanchez retrieved it from his vehicle's glove box, took it outside the vehicle, and then removed it from its holster. Second, Mr. Sanchez was under the influence of alcohol where he told the responding officer he was too intoxicated to drive.

¶ 26    Finally, the State addressed whether Mr. Sanchez acted out of necessity or self-defense. The following dialogue occurred:

"[THE STATE]: Now let's focus on necessity and self-defense. This is Defense's burden. These are affirmative defenses.

[DEFENSE COUNSEL]: Objection, objection, burden shifting.

THE COURT: Overruled. You may continue. Continue with your argument.

[DEFENSE COUNSEL]: It's burden shifting.

THE COURT: Counsel, objection is overruled.

[DEFENSE COUNSEL]: Thank you.

THE COURT: You may continue.

[THE STATE]: Necessity and self-defense are affirmative defenses that the Defense is asserting."

¶ 27 The State noted that Mr. Sanchez had testified he was "kind of scared," and argued that this did not justify walking a block to his vehicle to retrieve his firearm. The State asserted that Mr. Sanchez did not need to "grab his gun" when he had other options, such as walking home, calling the police, or hailing a rideshare. The State argued that Mr. Sanchez's "stories don't add up," and noted flaws in his testimony. The State concluded that, although Mr. Sanchez was "presumed innocent," he was not presumed to be truthful, and that it had "proven to you today that the Defendant committed a violation of the Concealed Carry Act."

¶ 28 The trial court instructed the jurors, in relevant part, that: "The State has the burden of proving the guilt of the Defendant beyond a reasonable doubt. This burden remains on the State throughout the case. The Defendant is not required to prove his innocence." The trial court gave the jury instructions defining necessity and self-defense. In addition, the trial court gave the following instruction:

"To sustain the charge of a Violation of the Concealed Carry Act, the State must prove the following propositions:

First Proposition: That the Defendant is a licensee to carry a concealed handgun; and

Second Proposition: That the Defendant carried a concealed handgun, firearm; and

Third Proposition: That when the Defendant did so, he was under the influence of alcohol.

Fourth Proposition: That the Defendant did not act out of necessity, nor was the Defendant justified in using the force which he used.

If you find from your consideration of all the evidence that these propositions have been proved beyond a reasonable doubt, you should find the Defendant guilty.

If you find from your consideration of all the evidence that these propositions have not been proved beyond a reasonable doubt, you should find the Defendant not guilty."

¶ 29    The jury found Mr. Sanchez guilty of possessing a concealed firearm while under the influence of alcohol, and the trial court imposed one year of misdemeanor probation. Mr. Sanchez filed a timely posttrial motion and amended motion arguing, in relevant part, that he was deprived of a fair trial where the State improperly shifted the burden of proof in closing arguments and the trial court overruled his objection. The trial court denied the motion.

¶ 30    On appeal, Mr. Sanchez contends that, in rebuttal closing argument, the State misstated the law and improperly shifted the burden of proof when it said that the defense had the burden to prove necessity and self-defense. Mr. Sanchez also argues that the trial court abused its discretion in overruling his objection to this comment.

¶ 31    Closing arguments allow the parties a final chance to review the evidence with the jury, discuss the meaning of that evidence, apply the applicable law, and argue why the evidence and the law compel a particular result. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). The State has wide latitude in making closing arguments and may comment on any fair, reasonable inferences the evidence yields, even if doing so reflects negatively on the defendant. *Id.* On review, a closing argument "must be viewed in its entirety, and the challenged remarks must be viewed in their context." *Id.* at 122.

¶ 32    Our supreme court has created a two-step process for determining whether a trial court's decision to overrule a defendant's objection to a comment made by a prosecutor in closing arguments is reversible error. *People v. Williams*, 2022 IL 126918, ¶ 41. First, a reviewing court must determine whether the comment was improper. *Id.* If so, the trial court's overruling of a defense objection to the comment is reviewed for an abuse of discretion, and whether the improper argument was so prejudicial as to require reversal is reviewed *de novo*. *Id.*; see also *People v. Aldridge*, 2025 IL App (1st) 231559-U, ¶ 78; Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 33    Mr. Sanchez argues that the State misstated the law when it told the jury, "Now let's focus on necessity and self-defense. This is Defense's burden. These are affirmative defenses." Mr. Sanchez interprets this remark as asserting that the defense had the burden of proving necessity and self-defense at trial. The State counters that, when viewed in the context of the entire closing argument, the remark addressed the requirement that a defendant provide "some evidence" in support of an affirmative defense and responded to defense counsel's statement in closing that "even though it is not the defense's burden," Mr. Sanchez called witnesses to tell what happened.

¶ 34    In order to raise an affirmative defense at trial, a defendant must present "some evidence" on the issue unless the State's evidence raises the issue. 720 ILCS 5/3-2(a) (West 2022); *People v. Guja*, 2016 IL App (1st) 140046, ¶ 46. If an affirmative defense is raised, then the State must prove the defendant guilty beyond a reasonable doubt as to that issue. 720 ILCS 5/3-2(b) (West 2022); *Guja*, 2016 IL App (1st) 140046, ¶ 46. Here, where the State did not present evidence as to necessity and self-defense, Mr. Sanchez was required to present "some evidence" in support of those affirmative defenses. *Guja*, 2016 IL App (1st) 140046, ¶ 46. "Although the threshold of evidence required to raise an affirmative defense is low, the defendant bears the burden to satisfy that requirement." *People v. Kite*, 153 Ill. 2d 40, 45 (1992).

¶ 35    Viewing the entirety of the closing arguments in context, the State's comment was not improper. In closing argument, the State explicitly told the jury that it had the burden of proving beyond a reasonable doubt four propositions, including that Mr. Sanchez did not act out of necessity and was not justified in using force. The State summarized the evidence relating to necessity and self-defense and stated that Mr. Sanchez's actions were not justified.

¶ 36    Defense counsel then stressed to the jury that the burden was on the State to prove beyond a reasonable doubt that Mr. Sanchez committed the charged offense. Counsel stated, "even though it is not the defense's burden," Mr. Sanchez called witnesses to tell what happened. Near the end of his argument, counsel reminded the jurors that, if the State failed to prove any of the propositions at issue, including that Mr. Sanchez's actions were not justified by necessity or self-defense, the jury would have to find him not guilty.

¶ 37    In rebuttal, the State commented, "Now let's focus on necessity and self-defense. This is Defense's burden. These are affirmative defenses." When defense counsel objected, the State

reworded its remark, stating, "Necessity and self-defense are affirmative defenses that the Defense is asserting." The State again briefly summarized the evidence relating to necessity and self-defense and concluded that it had "proven to you today that the Defendant committed a violation of the Concealed Carry Act."

¶ 38    Based on the preceding, the State expressed that it, and not the defense, carried the burden of proving that Mr. Sanchez's conduct was not justified by necessity or self-defense. As noted, the State unequivocally explained its burden regarding necessity and self-defense to the jury. Its utterance in rebuttal, "This is Defense's burden," could reasonably be seen as a response to counsel's argument that the defense called witnesses to tell what happened, even though it was "not the defense's burden" to do so. See, *e.g.*, *Williams*, 2022 IL 126918, ¶ 44 ("a prosecutor may comment on matters implicated by defense counsel").

¶ 39    Moreover, given that a defendant is, in fact, tasked with presenting "some evidence" in support of an affirmative defense, the State's comment was not entirely inaccurate. The fact that the State immediately rephrased its comment after the defense objection, clarifying that necessity and self-defense were affirmative defenses being asserted by the defense, suggests that, earlier, it was inartfully referring to this initial burden. Finally, this was one passing comment, and the State's closing arguments as a whole focused on explaining how it had met its burden of proving Mr. Sanchez guilty beyond a reasonable doubt. See *id.* ¶ 45 (rejecting contention that the State's comment in rebuttal improperly shifted the burden of proof where the comment was a reasonable response to defense counsel's argument, it was brief, and, after the defendant's objection was overruled, the State reminded the jury that the prosecution had the burden of proof beyond a reasonable doubt). In sum, reading the objected-to comment in context, we cannot find it improper.

¶ 40    As the objected-to comment was not improper, the trial court did not abuse its discretion in overruling the defense objection to the State's isolated comment. See *People v. Taylor*, 2019 IL App (3d) 160708, ¶ 43 (trial court's decision to overrule the defense objection to singular comment was not arbitrary, fanciful, or unreasonable); *People v. Cook*, 2018 IL App (1st) 142134, ¶ 67 (where State was responding to defense arguments, trial court did not abuse its discretion by overruling defense objections); *People v. Uzelac*, 179 Ill. App. 3d 395, 405 (1988) (trial court did not abuse its discretion when it overruled the defendant's objection that the State made arguments shifting the burden of proof).

¶ 41    Even if the State's comment were improper, however, it was not so prejudicial as to deprive Mr. Sanchez of a fair trial and to require reversal. See *Williams*, 2022 IL 126918, ¶ 41. It is reversible error for the prosecution to attempt to shift the burden of proof to the defense. See *People v. Leger*, 149 Ill. 2d 355, 399 (1992). However, where a defendant testifies and asserts an affirmative defense, a passing comment by the State about that defense is not reversible error. *People v. Falconer*, 282 Ill. App. 3d 785, 791 (1996) (citing *Leger*, 149 Ill. 2d at 400-01). Indeed, because the defendant bears the burden of production with regard to affirmative defenses, "it is questionable whether comments on whether defendant met that burden can be said to impermissibly shift the burden of proof to the defense." *Id.* Here, the State did not argue that Mr. Sanchez had the burden of proving his innocence or creating a reasonable doubt of his guilt. Rather, the State made a single comment related to Mr. Sanchez's affirmative defenses.

¶ 42    In addition, the trial court correctly instructed the jury that the State had the burden of proving Mr. Sanchez's guilt beyond a reasonable doubt, that this burden remained on the State throughout the case, that Mr. Sanchez was not required to prove his innocence, and that, to sustain

the charge alleged, the State was required to prove that Mr. Sanchez did not act out of necessity and was not justified in using force. These instructions cured any prejudice that may have resulted from the State's remark. See *People v. Holmon*, 2019 IL App (5th) 160207, ¶ 55 (correct jury instructions typically cure any prejudice from an isolated misstatement in closing argument); *People v. Quinn*, 173 Ill. App. 3d 597, 602 (1988) (a proper jury instruction on the burden of proof generally cures improper comments to the contrary during closing argument).

¶ 43    Under the circumstances, we are unable to say that, had the comment not been made, the jury's verdict would have been different. See *Leger*, 149 Ill. 2d at 399. As such, even if the comment were improper, we would not find reversible error. See *id.* at 399-401; see also *Williams*, 2022 IL 126918, ¶ 49 ("A prosecutorial comment in closing argument must be improper and substantially prejudicial. If it fails to meet either description, it is not reversible error.").

¶ 44    In sum, we reject Mr. Sanchez's arguments that the State's remark improperly shifted the burden of proof, and that the trial court abused its discretion in overruling his objection to the comment.

¶ 45    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 46    Affirmed.